**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NANCY DE BLOCK, individually and on
behalf of a collective of others similarly-
situated,

Plaintiffs,

-against-

SPEEDWAY LLC,

Defendant.

Case No.: 2:20-cv-00824-GAM
(JUDGE MCHUGH)

[ELECTRONICALLY FILED]

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR NOTICE OF**
**COLLECTIVE ACTION**

Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca S. Predovan
**HEPWORTH GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, NY 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
www.hgrlawyers.com

Derrek William Cummings, Esquire
**WEISBERG CUMMINGS P.C.**
2704 Commerce Dr., Suite B
Harrisburg, PA 17110
(717) 238-5707
***Attorneys for Plaintiff***

# Table of Contents

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ......................................................................... 3

I.      All Speedway Stores Follow the Same Centralized Reporting Structure...... 3

II.     The General Manager Position is Uniform Across Speedway's Operation
        Nationwide. ................................................................................... 4

        A.      Speedway General Managers have the same job responsibilities and
        perform the same tasks regardless of store or location. ...................................4

        B.      Speedway General Managers have the same job responsibilities and
        perform the same tasks regardless of store or location. ...................................5

        C.      All Speedway General Managers are subject to the same nationwide
        Speedway policies and procedures. ..............................................6

III.    Speedway Has Set theWage Scale for all General Managers Nationwide but
        Failed to Audit its Practices to ensure that it is Being Implemented in a
        Gender-Neutral Way. ......................................................................... 7

IV.     Plaintiffs Were Paid Less Than Their MaleColleagues in the Same Positions
        Performing the Same Tasks. ............................................................... 7

ARGUMENT ............................................................................................. 9

I.      The Fair Labor Standards Act's Lenient Conditional Collective Action
        Certification Standard Governs Certification of Plaintiffs' Equal Pay Act
        Claim............................................................................................10

II.     While Ultimately a Merits Issue All General Managers Perform the Same
        Tasks Under the SameConditions. ....................................................11

III.    Plaintiffs Are Similarly Situated Because a Common Compensation Policy
        Applies to All General Managers.....................................................12

IV.     Plaintiffs' Evidentiary Burden Is Typically Satisfied By Pleadings and
        Declarations Alone. ......................................................................14

V.      Plaintiffs Have More than Met the Low Burden Necessary for the Issuance
        of Notice.....................................................................................15

CONCLUSION ........................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Afsur v. Riya Chutney Mayor LLC,*
    Civ. No. 1203832, 2013 WL 3509620 (D.N.J. July 10, 2013) ............................................ 17

*Bell v. Citizen Fin. Group, Inc.,*
    Civ. No. 10-320, 2010 WL 3463300 (W.D. Pa. Sept. 2, 2010) ........................................... 17

*Bijoux v. Amerigroup N.Y. LLC,*
    No. 14-cv-3891, 2015 2015 WL 4505835 (E.D.N.Y. July 23, 2015) ................................... 15

*Bouder v. Prudential Fin., Inc.,*
    No. 06-CV-4359, 2008 WL 7898281 (D.N.J. Mar. 27, 2008) ............................................. 17

*Bredbenner v. Liberty Travel, Inc.,*
    No. 09-cv-0905, 2009 WL 2391279 (D.N.J. July 31, 2009) ................................................ 15

*Cambridge v. Sheetz, Inc.,*
    No. 1:17-cv-1649, 2018 WL 10467411 (M.D. Pa. Feb. 13, 2018) ...................................... 14

*Cardwell v. Stryden, Inc.,*
    No. 08-cv-5075, 2009 WL 1407760 (E.D. Pa. May 18, 2009) ............................................ 17

*Coates v. Farmers Grp., Inc.,*
    2015 WL 8477918 (N.D. Cal. Dec. 9, 2015) ....................................................................... 13

*Corning Glass Works v. Brennan,*
    417 U.S. 188 (1974) ............................................................................................................. 10

*DaRosa v. Speedway LLC.,*
    ........................................................................................................................ 2, 10, 11, 12

*DaRosa v. Speedway LLC,*
    Case Number: 1:19-cv-10791-RGS ......................................................................... 1, 2, 5, 15

*Diabate v. MV Transp., Inc.,*
    Civ. No. 14-857, 2015 WL 4496616 (E.D. Pa. July 20, 2015) ..................................... 11, 15

*Drummond v. Herr Foods Inc.,*
    No. CIV.A. 13-5991, 2015 WL 894329 (E.D. Pa. Mar. 2, 2015) ....................................... 17

*Earl v. Norfolk State Univ.,*
    2014 WL 6608769 (E.D. Va. Nov. 18, 2014) ............................................................... 13, 17

*Elliott v. Amspec Servs., LLC*,
  No. 10-CV-6575, 2011 WL 6002019 (D.N.J. Nov. 29, 2011) .............................................15

*Finefrock v. Five Guys Operations, LLC*,
  344 F.Supp.3d 783 (M.D.Pa. 2018) ........................................................................*passim*

*Gervasio v. Wawa, Inc.*,
  No. 17 Civ. 245, 2018 WL 385189 (D.N.J. Jan 11, 2018) ..................................................14

*Given v. Love's Travel Stops & Country Stores, Inc.*,
  No. 17 Civ. 1266, 2018 WL 925996 (M.D. Pa. Feb. 16, 2018) ..........................................14

*Hively v. Allis Chalmers Energy, Inc.*,
  Civ. No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) ...........................................11

*Kassman v. KPMG LLP*,
  No. 11-cv-03743 LGS, 2014 WL 3298884 (S.D.N.Y. July 8, 2014) ....................... 13, 14, 17

*Krstic v. J.R. Contracting & Envtl. Consulting*,
  Civ. No. 09-2459, 2011 WL 1042732 (D.N.J. Mar. 16, 2011).............................................15

*Lewis v. Alert Ambulette Serv. Corp.*,
  No. CV-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ...........................................15

*Manning v. Goldbelt Falcon, LLC*,
  Civ. No. 08-3427, 2010 WL 3906735 (D.N.J. Sept. 29, 2010) ...........................................17

*McColley v. Casey's General Stores, Inc.*,
  2021 WL 1207564 (N.D.Ind. March 31, 2021) ...................................................................14

*Moore v. Publicis Groupe SA*,
  2012 WL 2574742 (S.D.N.Y. June 29, 2012) ............................................................... 14, 15

*Ornelas v. Hooper Holmes, Inc.*,
  No. 12-CV-3106 JAP, 2014 WL 7051868 (D.N.J. Dec. 12, 2014) .....................................15

*Outlaw v. Secure Health L.P.*,
  No. 3:11-cv- 602, 2012 WL 3150582 (E.D. Pa. Aug. 2, 2012)...........................................17

*Pearsall-Dineen v. Freedom Mortg. Corp*,
  27 F. Supp. 3d 567 (D.N.J. 2014) .......................................................................................11

*Rochester v. City of E. Orange*,
  No. 2:12-cv-5988, 2013 WL 6858855 (D.N.J. Dec. 30, 2013) ...........................................15

*Rodgers v. Target Corp.*,
  Civ. No. 08-1300, 2012 WL 4482422 (W.D. La. Sept. 28, 2012).......................................17

*Ruffin v. Avis Budget Car Rental, LLC*,
  No. CIV.A. 11-01069 SDW, 2012 WL 2514841 (D.N.J. June 28, 2012)..............................17

*Shakib v. Back Bay Rest. Grp.*,
  No. 10-cv-4564, 2011 WL 5082106 (D.N.J. Oct. 26, 2011) ...................................................15

*Smith v. Merck & Co.*,
  2016 WL 1690087 (D.N.J. Apr. 27, 2016)....................................................... 10, 11, 12, 13

*Steinberg v. TD Bank, N.A.*,
  No. 10-CV-5600 ...............................................................................................................15, 17

*Symczyk v. Genesis HealthCare Corp.*,
  656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013).... 10, 11, 13, 14

*Vargas v. Gen. Nutrition Centers, Inc.*,
  No. 2:10-CV-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012), *order
  clarified*, No. 2:10-CV-867, 2012 WL 5336166 (W.D. Pa. Oct. 26, 2012) ....................15, 17

*Zanes v. Flagship Resort Dev., LLC*,
  Civ. No. 09- 3736, 2010 WL 4687814 (D.N.J. Nov. 9, 2010) ..............................................15

**Statutes**

29 U.S.C § 216(b) ................................................................................................................., 10, 17

Equal Pay Act, 29 U.S.C. § 206(d)(1)...................................................................................1, 10

29 C.F.R. § 1620.9(b)..................................................................................................................12

Pursuant to the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), and its enforcement provision, 29 U.S.C § 216(b), Plaintiff Nancy De Block, together with Opt-ins Elaine James, Rebecca Wertheim, Sandra Caldwell, Deborah Dean and Yvonne Smith   (collectively, "Plaintiffs") submit this memorandum in support of their Motion for Notice of Collective Action in connection with their claims alleging that Speedway LLC ("Speedway" or "Defendant"), failed to pay their female General Managers the same as its male General Managers, despite performing substantially the same work under equal working conditions.

## INTRODUCTION

Speedway LLC ("Speedway" or "Defendant"), is a typical large convenient store and gas station chain with stores across the country.  Plaintiffs are General Managers (hereinafter "GMs") for Speedway who have already been found to be similarly situated in a collective action titled, *DaRosa v. Speedway LLC,* Case Number: 1:19-cv-10791-RGS in the District Court of Massachusetts.  The female Speedway GMs herein are a subset of that collective and are thus clearly also similarly situated. As the Court in *DaRosa* noted:

> DaRosa has made an adequate showing that Speedway GMs in level 1 to 5 stores are similarly situated. Relying on the GM position's job description, Speedway's Code of Conduct, and a dozen or so affidavits, DaRosa has made a prima facie showing that Speedway GMs in level 1 to 5 stores have the same title, position, and responsibilities across the stores, and were uniformly classified as salaried exempt employees.[1]

---

[1] Level six stores have a higher volume of sales and is Speedway's largest store format, which would directly impact the merits analysis (not the certification analysis) in an overtime misclassification case where such individuals might have been doing more managerial exempt work.  This is obviously not an issue here due to the nature of Plaintiffs EPA claims.  Women at larger format stores performing equal work in equal conditions must still be paid at an equivalent rate to their male counterparts.  Thus, while there is a slight difference in scope it is irrelevant due to the claims being advanced.  Plaintiffs also note that as only female General Managers are being included in the definition of the putative collective, the size of the putative collective will still nonetheless be a subset of what was granted in *DaRosa*.

*DaRosa v. Speedway LLC.*, 19- cv- 10791, Dkt. No. 47 (D. Mass. Feb. 20, 2020).

All female GM's are clearly similarly situated, as they were already found to be in *DaRosa*. Here the Speedway GMs in *DaRosa* have the same title, position, and responsibilities across the stores, and were uniformly classified as salaried exempt employees. Plaintiffs have significant evidence that, in practice, the result of Speedway's compensation policies is that female General Managers are paid less than men in the same role, performing equal work.

Moreover, this case is basically identical to another case recently heard in this Circuit: *Finefrock v. Five Guys Operations, LLC,* 344 F.Supp.3d 783, 788 (M.D.Pa. 2018) where it was found on similar facts, involving another chain store with top down policies that the female plaintiffs had made the modest showing necessary to issue notice for Equal Pay Act violations. *Id.* at 790–91 (finding that Plaintiffs have met their modest factual burden that Plaintiffs are similarly situated by demonstrating that General Managers "had the same job descriptions and responsibilities, required the same baseline qualifications nationwide . . . .") This case will be further discussed *infra* at 12-13.

Plaintiff, Nancy De Block was aware that at the time she was working for Speedway that her salary was less than male GM's who were working at Speedway as GM's, who were earning significantly more. Ms. De Block knew this as the result of seeing of General Managers salaries, which were all in an email that was sent to her by her then District Manager Shane Hartman. Ex. A, De Block Tr. 178:25-191:23. When Ms. De Block was hired as a General Manager she was paid approximately $32,000 per year. *Id.* at 177:24-178:5. Speedway paid Ms. De Block less than the General Manager at its Newton, New Jersey location Rick [Last Name Unknown] a male GM, who earned approximately $47,000 per year or more. *Id.* at 182:8. Despite this fact, Ms. De Block was forced to mentor Rick, because unlike Ms. De Block, Rick's professional background was in

landscaping, not retail management. *Id.* at 184:2-10. Speedway paid Rick and Ms. De Block this way, even though the General Manager position required equal work, skill, effort, and responsibility for all General Managers regardless of gender. The Opt-in Plaintiffs have strikingly similar accounts, detailing significant pay differentials with their male General Manager counterparts for work that requited equal effort responsibility and skill. . Ex. A, De Block Tr. 178:25-191:23; Ex. B, James Decl. at 3 ¶ 12; Ex. C, Caldwell Decl. at 2 ¶ 9; Ex. D, Dean Decl. at 3 ¶ 13; Ex. E, Wertheim Decl. at 2-3 ¶ 11; Ex. F, Smith Decl. at 3 ¶ 11. Plaintiffs respectfully request that the Court to grant conditional collective action certification and send Plaintiffs' proposed notice of this case to:

> All female employees who are or have been employed by Defendant Speedway LLC, as salaried General Managers from three (3) years prior to the filing date of this action until present.[2]

Such action would give these women the opportunity to opt into this case, toll their limitations period, and allow them to pursue their claims as a collective.

## STATEMENT OF FACTS

**I.** **All Speedway Stores Follow the Same *Centralized* Reporting Structure.**

Speedway LLC operates the second largest chain of company-owned and operated retail gasoline and convenience stores in the United States, with approximately 3,900 convenience stores in 36 states throughout the Midwest, East Coast and Southeast. Dkt. No. 1 ¶¶ 2-3.

Each convenience store has a General Manager position that assists in ensuring the profitable operation of each store. Ex. A, De Block  Tr. 178:25-191:23; Ex. B, James Decl. at 1 ¶ 2; Ex. C, Caldwell Decl. at 2-3 ¶ 10; Ex. D, Dean Decl. at 1-2 ¶ 2; Ex. E, Wertheim Decl. at 3 ¶

---

[2] There are apparently a small number of non-exempt General Managers, however these individuals fall outside of Plaintiffs' proposed collective.

12; Ex. F, Smith Decl. at 3 ¶ 2.  These General Managers are all subject to the same employment and classification scheme regardless of *any* factor. Ex. G, McCoart Tr. at 37:2-18; 39:1-9.

General Managers at Speedway report directly to a District Manager. Ex. I at 1, General Manager Responsibility Statement.  District Managers supervise between 12 and 20 stores and oversee the operations of the stores within their District. Ex. H, Schroll Tr. at 53:12-25.  District Managers report directly to a Regional Manager and the Regional Managers report to their Division Directors. *Id*.  Division Directors supervise approximately 300 to 350 stores. *Id*. at 54:2-4.  The Division Directors report directly to one of two Division Vice Presidents. *Id*. at 54:5-15. This structure is just one of the methods that Speedway ensures uniformity and consistency from store to store. Ex. H, Schroll Tr. at 140:10-15.

## II.   The General Manager Position is Uniform Across Speedway's Operation Nationwide.

### A.   Speedway General Managers have the same job responsibilities and perform the same tasks regardless of store or location.

According to Speedway's 30(b)(6) corporate representative Rene Schroll, Human Resource Manager Northeast testified that all Speedway General Managers throughout the country perform the same essential duties and job responsibilities, execute the same tasks, training, and are required to have the same baseline qualifications and perhaps most importantly are subject to the same position specific pay policies. Ex. H, Schroll Tr. at 108:4-10 (duties); 153:7-157:15 (job responsibilities);  162:2-163:14 (job responsibilities);  158:20-159:10 (training);  108:11-109:9 (qualifications); Ex. J at 2, 13-15, Compensation Manual.

Ms. Schroll also testified that General Managers perform the same responsibilities and are subject to the same pay scheme companywide:

[Q.]   Would the responsibilities be the same for every GM in every Speedway store?

A.      The responsibilities, yes, are a summary of the duties, you know, the responsibilities of the general manager position.

*Id*. at 108:4-10.

A.      And those GMs would be exempt and salaried, regardless of the gender they are; correct?
Q.      That is correct.
A.      And they would be exempt and salaried, regardless of the district they were in; correct?
A.      That's correct.
Q.      And they would be exempt and salaried, regardless of the region they were in; correct?
A.      That's correct.
Q.      And they would be exempt and salaried, regardless of the eight divisions they were in?  It is my understanding there are eight divisions.
A.      That's correct.
[. . . ]
Q.      And regardless of the training before becoming a GM?
A.      If we've already deemed them salary, yes.
Q.      Regardless of the shift they worked?
A.      That's correct.

Ex. G, McCoart Tr. at 37:2-18; 39:1-9, *see also* Ex. J at 2, 13-15, Compensation Manual.

As further evidence of the uniformity of the General Manager position across the country, and by extension the fact that female General Managers are similarly situated, Human Resources has created and issued a job description for the General Manager position that applies with equal force to all General Managers in the country. Ex. I at 1, General Manager Responsibility Statement. Again, nearly identical proof to that seen in *Finefrock* and *DeRosa*.[3]

**B.  Speedway General Managers have the same job responsibilities and perform the same tasks regardless of store or location.**

_____

[3] Here Plaintiffs have substantially more proof than in *Finefrock* and *DaRosa*.  In *Finefrock* plaintiffs supported their motion with the testimony of two plaintiffs, a handbook and job description, together with admissions made by Five Guys 30(b)(6) witness.  In *DaRosa* the plaintiffs relied on the GM position's job description, Speedway's Code of Conduct, and a dozen or so affidavits.

As with the General Manager position, Speedway considered its General Manager position to have the same job responsibilities throughout the country. Ex. H, Schroll at 108:4-10. Speedway codified its view as to the uniformity of the position in its Responsibility Statement, which functionally is a job description.   This job description was unsurprisingly developed by Speedway's corporate compensation team within Speedway's Human Resources department, which is overseen by Speedway's second selected 30(b)(6) corporate representative Jessica McCourt. This job description applies with equal force to all General Managers in the country and demonstrates that Speedway treated its General Mangers' duties as being the same nationwide. *Id*., at 103: 18-23 ("Q. And is this the same responsibility statement, regardless of the gender of the Speedway GM?   A. This is the same responsibility statement, regardless of gender responsibility statement for district managers in all of Speedway LLC.")

## C.    All Speedway General Managers are subject to the same nationwide Speedway policies and procedures.

In addition to the uniform job responsibilities and chain-of-command reporting structure, all Speedway General Managers are subject to the  same nationwide policies and procedures as dictated by Speedway corporate management. Ex. H, Schroll Tr. at 139:6-140:15.  To effectuate these policies and procedures, Speedway issues an employee operations manual that applies to all Speedway General Managers in the country. *Id*.   Speedway's corporate representative acknowledged that the "goal" of Speedway's application of its operation mandates companywide was to ensure consistency and that things are being done "the right way." *Id.* at 140:10-15.

Speedway conducts uniform employee performance evaluations for its General Managers, using the exact same form Company wide. Ex. G, McCoart Tr. at 97:2-98:4. In addition, Speedway evaluates its General Managers on the same metrics termed "Customer Readiness Indicators"

which measure aspects of store GM store performance. *Id*. Speedway also rewards its General

Managers using the same bonus program. *Id*. at 93:17-94:25.

### III.   *Speedway Has Set theWage Scale for all General Managers Nationwide but Failed to Audit its Practices to ensure that it is Being Implemented in a Gender-Neutral Way.*

Speedway's Corporate Representative Jessica McCourt is the Compensation and Benefits

Manager at Speedway and is responsible for developing the compensation manual and salary

structure for store level positions. Ex. G, McCoart Tr. at 28:2-11; Ex. J at 2, 13-15, Compensation

Manual.  Moreover, the testimony of Speedway's own witnesses was clear that Speedway

corporate set, the salary structure for all store and non-store employees, including "all GMs

nationwide" and that individuals at the local level could not deviate from the salary structure

implemented in Speedway's compensation manual. *Id*. at 54:11-19.  This is consistent with the

Plaintiffs testimony, which was clear that corporate set the pay rates for store employees. Ex. B,

James Decl. at 3 ¶ 11; Ex. C, Caldwell Decl. at 1 ¶ 3; Ex. D, Dean Decl. at 2-3 ¶ 6; Ex. E, Wertheim

Decl. at 3 ¶ 12; Ex. F, Smith Decl. at 3 ¶ 2; *see also* Ex. J at 2, 13-15, Compensation Manual.

Likewise, to date Speedway has failed to audit is pay practices to ensure that its policies

were being implemented in a gender neutral way. Ex. G, McCoart Tr. at 99:9-14.  As a result,

Speedway's General Manager compensation policy is a pay scheme implemented in connection

with all the General Mangers it employs, this fact alone is sufficient to warrant a finding that the

proposed collective in this action is sufficiently similar to warrant the issuance of notice. Ex. J at

2, 13-15, Compensation Manual.

### IV.   *Plaintiffs Were Paid Less Than Their MaleColleagues in the Same Positions Performing the Same Tasks.*

Plaintiffs' evidence in support of notice is greater than that presented in *Finefrock*, because

Plaintiffs can show a companywide wage policy.  Despite the uniform nature of the General

Manager wage scales implemented by Speedway, its execution, resulted in a disparity in pay between the male and female General Managers.  Both Plaintiffs and Opt-ins have identified male colleagues who were paid more than them in the same positions performing the same work. Ex. A, De Block  Tr. 286:9-287:23; Ex. B, James Decl. at 3 ¶ 12; Ex. C, Caldwell Decl. at 2 ¶ 9; Ex. D, Dean Decl. at 3 ¶ 13; Ex. E, Wertheim Decl. at 2-3 ¶ 11; Ex. D, Dean Decl. at 3 ¶ 13; Ex. F, Smith Decl. at 3 ¶ 11.  Speedway paid its General Managers in this disparate fashion, despite the fact that due to its own rigorous branding efforts, all General Managers performed essentially the same work which required the same effort and skill in what was essentially the same working conditions.

While the work performed and similarity of the Plaintiffs' working conditions is ultimately a merits issue, Plaintiff Nancy De Block and the Opt-ins' declarations support that they performed substantially similar duties which included: working the cash register;[4] stocking shelves[5]; gas and cigarette surveys[6]; daily cigarette and cooler inventory[7]; cleaning and straightening the store[8], gas pumps[9], and parking lots[10]; preparing hot food and beverages[11], assisting customers[12]; filling in for other employees including at other stores[13]; organizing the store according to detailed corporate

---

[4] ; Ex. B, James Decl. at 1 ¶ 2; Ex. C, Caldwell Decl. at 2-3 ¶ 10; Ex. D, Dean Decl. at 1-2 ¶ 2; Ex. E, Wertheim Decl. at 3 ¶ 12; Ex. F, Smith Decl. at 1-2 ¶ 2.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

directives[14]; counting the safe[15]; performing inventory[16], checking expiration dates[17], monitoring fuel levels[18], changing over signage and planograms[19] monthly as dictated by corporate[20], ensuring preparedness for FIMs inspections[21]; checking in vendors[22], unloading delivered merchandise[23], and any other tasks required to ensure the profitable operation of my assigned store[24].

As in *Finefrock*, the Opt-in Plaintiffs here, both had strikingly similar accounts, detailing pay differentials that ranged from $6,000.00 to $15,000.00 when compared to their male General Manager counterparts for work that requited equal effort responsibility and skill. Ex. A, De Block Tr. 286:9-287:23; Ex. B, James Decl. at 3 ¶ 12; Ex. C, Caldwell Decl. at 2 ¶ 9; Ex. D, Dean Decl. at 3 ¶ 13; Ex. E, Wertheim Decl. at 2-3 ¶ 11; Ex. D, Dean Decl. at 3 ¶ 13; Ex. F, Smith Decl. at 3 ¶ 11. Plaintiffs respectfully request that the Court to grant conditional collective action certification and send Plaintiffs' proposed notice of this case to salaried female General Managers throughout the country giving these women the opportunity to opt into this case, toll their limitations period, and pursue their claims as a collective.

Accordingly, Plaintiffs have identified a common compensation policy and that resulted in gender-based compensation inequity.[25]

## ARGUMENT

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] Plaintiffs note that they requested pay records in their discovery requests, inviting Speedway to disprove Plaintiffs' claims with their pay records, nevertheless Defendant refused.

**I.**     ***The Fair Labor Standards Act's Lenient Conditional Collective Action Certification Standard Governs Certification of Plaintiffs' Equal Pay Act Claim.***

The GMs in this matter have already been certified as a collective for an overlapping time period in *DaRosa v. Speedway LLC*., 19- cv- 10791, Dkt. No. 47 (D. Mass. Feb. 20, 2020) for overtime wages, while the claims are different, the EPA standard to obtain conditional certification is the same.

The EPA is an amendment to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., which added "the principle of equal pay for equal work regardless of sex" to the FLSA's statutory framework. *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974); *see also* 29 U.S.C. § 206(d)(1).  As a provision of the FLSA, private litigants may enforce the EPA and band together as a collective pursuant to Section 16(b) of the FLSA. *Smith v. Merck  & Co.*, 2016 WL 1690087, at *3 (D.N.J. Apr. 27, 2016) (following Third Circuit precedent in certifying a collective of female employees under the EPA and Section 16(b) of the FLSA); *see also* 29 U.S.C. § 216(b).

The Third Circuit has adopted the predominant two-step approach to conditional collective action certification under Section 16(b) of the FLSA. *Symczyk v. Genesis HealthCare Corp*., 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013).  Under the two-step approach, the plaintiff must show that the proposed collective is "similarly situated" by making a"modest factual showing . . . beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 192-93 (internal quotations omitted).

There is no question that the first-stage analysis applies here. Only after (i) potentially "similarly situated" employees have received notice and an opportunity to opt-in *and* (ii) discovery is completed does a court move to stage-two "final certification" or "decertification."  The court

then applies a more searching inquiry to determine whether the named and opt-in plaintiffs are actually "similarly situated" and the case should proceed to trial on a collective basis. *See*, *e.g.*, *Camesi*, 729 F.3d at 243; *Diabate v. MV Transp., Inc.*, Civ. No. 14-857, 2015 WL 4496616, at *7 (E.D. Pa. July 20, 2015) (holding that defendants cannot bypass lenient stage one standard even where substantial discovery has been conducted); *Pearsall-Dineen v. Freedom Mortg. Corp*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014) (holding that the court proceeds to stage-two certification only after notice, the opt-in process, and "[a]t or near the conclusion of discovery").[16] Under the Third Circuit's two-step process, the first phase is "primarily about facilitating notice" and the stage-one "modest factual showing" standard applies. *Hively v. Allis Chalmers Energy, Inc.*, Civ. No. 13-106, 2013 WL 5936418, at *4 (W.D. Pa. Nov. 5, 2013).

If the plaintiff satisfies this lenient burden, then the district court conditionally certifies the collective, the only effect of which is to issue notice to potential opt-ins. *Id*. at 192.  Following an opt-in period and completion of merits-based discovery, the district court makes a conclusive determination as to whether each plaintiff who has opted into the collective action is similarly situated to the named plaintiff for purposes of trial. *Id*. at 193.  Here, Plaintiffs easily satisfy the "modest factual showing" necessary to conditionally certify the collective. *Id*. at 193; *see also Finefrock v. Five Guys Operations, LLC,* 344 F.Supp.3d 783, 788 (M.D.Pa. 2018)*; Smith v. Merck & Co*., 2016 WL 1690087, at *5.  Plaintiff also notes that essentially the exact same issue was decided in *DaRosa v. Speedway LLC*., 19- cv- 10791, Dkt. No. 47 (D. Mass. Feb. 20, 2020) (granting conditional certification for the General Manager position in a overtime misclassification action).

**II.**    ***While Ultimately a Merits Issue All General Managers Perform the Same Tasks Under the SameConditions.***

There can be no dispute that, for purposes of conditional collective action certification, Plaintiffs have met their modest factual burden of showing that all Speedway General Managers throughout the country perform the same daily duties and perform them under virtually identical working conditions. 29 C.F.R. § 1620.9(b). In fact, Speedway's Corporate Representative, unequivocally testified that all General Managers throughout the country have the same essential duties and job responsibilities, execute the same tasks, training, are required to have the same baseline qualifications, and are evaluated in the same fashion using the same metrics. Ex. H, Schroll Tr. at 108:4-10 (duties); 153:7-157:15(job responsibilities);162:2-163:14 (job responsibilities), 158:20-159:10 (training), 108:11-109:9 (qualifications); Ex. G, McCoart Tr. at 93:17-94:25, 97:2-98:4 (evaluations). All of which is why Speedway Human Resources issues a uniform job description that applies to all General Managers. Ex. I at 1, General Manager Responsibility Statement. This commonality of job duties and working conditions alone merits conditional collective action certification.

### III. *Plaintiffs Are Similarly Situated Because a Common Compensation Policy Applies to All General Managers.*

Plaintiffs have satisfied their modest factual burden of showing that Plaintiffs are similarly situated with respect to a common wage policy such that conditional collective action certification should be granted and notice should issue. *Finefrock v. Five Guys Operations, LLC,* 344 F.Supp.3d 783, 788 (M.D.Pa. 2018)(certifying a EPA collective action of female General Managers and Assistant General Managers based upon a similar record to the one presented here); *DaRosa v. Speedway LLC.*, 19- cv- 10791, Dkt. No. 47 (D. Mass. Feb. 20, 2020)(certifying a FLSA collective action of Speedway General Managers, nearly identical to the proposed collective being sought against Speedway here); *Smith v. Merck & Co.*, 2016 WL 1690087, at *5 (certifying a collective action of female employees based in part on the finding that "Plaintiffs have submitted sufficient

information at this stage to show that the sales representatives were performing similar responsibilities."); *Kassman v. KPMG LLP*, No. 11-cv-03743 LGS, 2014 WL 3298884, at *8 (S.D.N.Y. July 8, 2014) (certifying a collective action of female employees based in part on the finding that "Plaintiffs have presented evidence that job responsibilities were generally the same across offices."); *Coates v. Farmers Grp., Inc.*, 2015 WL 8477918, at *12 (N.D. Cal. Dec. 9, 2015) (certifying a collective of female attorneys and noting that the plaintiff "offered evidence that the legal tasks, skills, and knowledge of attorneys at least at salary grades are substantially identical.").

Plaintiffs have certainly satisfied their modest factual burden of showing that Plaintiffs are similarly situated with respect to this common wage policy such that conditional collective action certification should be granted and notice should issue. *Symczyk*, 656 F.3d 189, 192-93. District courts throughout the country have granted conditional collective action certification based on similar, and in many cases less robust factual records.

In another analogous case, *Smith v. Merck & Co.*, 2016 WL 1690087 (D.N.J. Apr. 27, 2016) the Court analyzed the EPA under Third Circuit precedent. In *Smith*, the district court granted conditional certification of a collective of female employees based on a finding of centralized corporate involvement in the setting of employee wages. *Smith*, 2016 WL 1690087, at *5. Here, Plaintiffs can demonstrate a greater degree of centralized control over wages as Speedway has a wage scheme for all General Managers. *See also*, *Coates*, 2015 WL 8477918, at *11 (conditionally certifying a collective action class of female attorneys and finding that "[c]ommon policies related to compensation are relevant to conditional EPA class certification because a compensation policy that is applied across the proposed class, coupled with evidence that the policy results in discriminatorily unequal pay, suggests the existence of other similarly situated plaintiffs who may have EPA claims arising from the application of that policy."); *Earl v.*

*Norfolk State Univ.*, 2014 WL6608769, at *6 (E.D. Va. Nov. 18, 2014) (conditionally certifying a collective action class of male faculty under the EPA based on a common compensation policy and evaluation process); *Kassman*, 2014 WL 3298884, at *6-9 (S.D.N.Y. July 8, 2014) (conditionally certifying a collective action class of  female employees of KPMG under the EPA where Plaintiffs' submitted evidence of "KPMG's firm-wide compensation policies and job descriptions"); *Moore v. Publicis Groupe SA*, 2012 WL 2574742, at *10-11 (S.D.N.Y. June 29, 2012) (conditionally certifying a collective action class of female employees where plaintiffs made a modest factual showing that they were subject to the samecompensation policy).

In the FLSA, not the EPA context, courts including several within this Circuit granted conditional certification in recent cases involving convenience store chains like the one at issue here, in each the court found that the uniformity of the positions at issue and the defendants business operations warranted conditional certification. See, e.g., *Gervasio v. Wawa, Inc.*, No. 17 Civ. 245, 2018 WL 385189, at *6–7  (D.N.J. Jan 11, 2018);  *Given v. Love's Travel Stops & Country Stores, Inc.*, No. 17 Civ. 1266, 2018 WL 925996, at *2 (M.D. Pa. Feb. 16, 2018)(granting conditional certification on declarations, a job description and corporate documents), and *Cambridge v. Sheetz, Inc.*, No. 1:17-cv-1649, 2018 WL 10467411, at *3 (M.D. Pa. Feb. 13, 2018) granting conditional certification on declarations, a job description and corporate documents), and *McColley v. Casey's General Stores, Inc*., 2021 WL 1207564, at *7 (N.D.Ind. March 31, 2021).

Based on the foregoing, Plaintiffs respectfully submit that they have carried their "modest" burden of showing that Plaintiffs and the putative collective are "similarly situated." *Symczyk*, 656 F.3d 189, 192-93.

**IV.    *Plaintiffs' Evidentiary Burden Is Typically Satisfied By Pleadings and Declarations Alone.***

In *DaRosa* a collective was certified on similar proof as that presented here, however it did not have the benefit of a prior decision certifying the GMs as similarly situated.  Given this very low standard, the *DaRosa* decision and Plaintiffs' minimal evidentiary burden Plaintiffs have exceeded  their stage one burden warranting certification . Indeed, in other circumstances this burden may be met by pleadings and declarations alone. *See*, *e.g.*, *Steinberg v. TD Bank, N.A*., No. 10-CV-5600 RMB-JS, 2012 WL 2500331, at *6 (D.N.J. June 27, 2012) (stating that "courts examine the pleadings and certifications submitted by plaintiff" for factual support); *Elliott*, 2011 WL 6002019, at *2; *Moore*, 2012 WL 2574742, at *9.  The court may consider both time-barred evidence and hearsay. *See, e.g.*, *Shakib v. Back Bay Rest. Grp*., No. 10-cv-4564, 2011 WL 5082106, at *4 (D.N.J. Oct. 26, 2011); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-0905, 2009 WL 2391279, at *2 n.1  (D.N.J.  July  31,  2009).

Plaintiffs need only provide "*some* factual basis from which the court  can determine if similarly situated potential plaintiffs exist." *E.g.*, *Krstic v. J.R. Contracting & Envtl. Consulting*, Civ. No. 09-2459, 2011 WL 1042732, at *6 (D.N.J. Mar. 16, 2011) (emphasis added).

Moreover, when evaluating whether notice is appropriate, the court does not yet weigh the evidence, resolve factual disputes, make credibility assessments, or reach the merits of the claims. *Neal*, 2015 WL 225432, at *3 ; *Ornelas v. Hooper Holmes, Inc*., No. 12-CV-3106 JAP, 2014 WL 7051868, at *2 (D.N.J. Dec. 12, 2014); *Moore*, 2012 WL 2574742, at *9; *Barrett*, 2015 WL 5155692, at *2.  A "fact- intensive" inquiry is improper. *Bijoux v. Amerigroup N.Y. LLC*, No. 14-cv-3891, 2015 2015 WL 4505835, at *10 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, No. 14-CV-3891 RJD VVP, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015; *see also, Steinberg*, 2012 WL 2500331, at *6 .

**V.**    ***Plaintiffs Have More than Met the Low Burden Necessary for the Issuance of Notice.***

## CONCLUSION

Plaintiffs respectfully request that the Court GRANT Plaintiffs' Motion for Conditional Collective Action Certification and order all of the relief prayed for in the Motion.  Plaintiffs also respectfully request that  the  Court Order notice to issue to the collective in the form submitted by Plaintiffs. *See* Predovan Decl., Ex. K, Plaintiffs' Proposed Notice to the Collective and Consent to Join Form. Finally, Plaintiffs respectfully request that their counsel, Hepworth Gershbaum & Roth, PLLC and Weisberg Cummings, P.C., be appointed counsel for the conditionally certified collective and for any other relief the Court deems appropriate under the circumstances.

Date:   July 1, 2021
        New York, New York

By:     *s/Rebecca S. Predovan*
        Rebecca S. Predovan
        Marc S. Hepworth
        Charles Gershbaum
        David A. Roth
        **HEPWORTH GERSHBAUM & ROTH, PLLC**
        192 Lexington Avenue, Suite 802
        New York, NY 10016
        Telephone: (212) 545-1199
        Facsimile: (212) 532-3801
        www.hgrlawyers.com
        /s/ Derrek W. Cummings
        Derrek William Cummings, Esquire
        **WEISBERG CUMMINGS P.C.**
        2704 Commerce Dr., Suite B
        Harrisburg, PA 17110
        (717) 238-5707

        ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this July 1, 2021, a copy of the fore going `Memorandum in Support` was filed using the Eastern District of P ennsylvania's ECF system, through which this document is available for viewi ng and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Margaret C. O'Neill, Esquire
moneill@shb.com

**SHOOK, HARDY & BACON L.L.P.**
2001 Market Street
Suite 3000
Philadelphia, PA 19103

William C. Martucci, Esquire
wmartucci@shb.com

Kristen A. Page, Esquire
kpage@shb.com

**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO 64108

*Counsel for Defendant*

/s/ Derrek W. Cummings
Derrek W. Cummings

5