**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NANCY DE BLOCK, individually and on behalf of a collective of others similarly-situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:20-cv-00824-GAM |
| v. | ) ) | |
| Speedway LLC, | ) | |
| Defendant. | ) ) ) | |

**<u>DEFENDANT SPEEDWAY LLC'S SUGGESTIONS IN OPPOSITION TO PLAINTIFFS'
MOTION FOR NOTICE TO COLLECTIVE ACTION</u>**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 1

III.  ARGUMENT AND AUTHORITIES .......................................................................... 4

    a.  Standard of Review ................................................................................................ 4

    b.  Plaintiffs misconstrue their burden at conditional certification and fail to surmount their initial hurdle of establishing that putative collective members are similarly situated to one another under a common unlawful policy. ........................................................................ 5

    c.  What little factual support Plaintiffs provide is unreliable and insufficient to justify conditional certification. ........................................................................................... 9

    d.  Other factors, namely the individualized defenses at issue and the unmanageability of the proposed collective, also counsel against conditional certification. ................................ 13

IV.  CONCLUSION ............................................................................................................. 16

4824-6229-9640 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abe v. Virginia Dep't of Env't Quality*,
  No. 3:20-CV-270, 2021 WL 1845324 (E.D. Va. Apr. 6, 2021)................................................. 11

*Ahad v. Bd. of Trustees of S. Illinois Univ.*,
  No. 15-CV-3308, 2019 WL 1433753 (C.D. Ill. Mar. 29, 2019) ......................................... 19, 20

*Babin v. Stantec, Inc.*,
  No. CIV.A 09-1160, 2010 WL 3363920 (E.D. Pa. Aug. 25, 2010)......................................... 14

*Bond v. Nat'l City Bank of Pennsylvania*,
  No. 05CV0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006)................................................. 20

*Bramble v. Wal-Mart Stores, Inc.*,
  No. CIV.A.09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ....................................... 5, 9

*Diaz v. Elecs. Boutique of Am., Inc.*,
  No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005).................................. 17

*Eng–Hatcher v. Sprint Nextel Corp.*,
  No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)...................................... 12, 16

*Evancho v. Sanofi-Aventis U.S. Inc.*, No. CIV. A.,
  07-2266 (MLC, 2007 WL 4546100 (D.N.J. Dec. 19, 2007).................................................... 18

*Guillen v. Marshalls of MA, Inc.*,
  750 F. Supp. 469 (S.D.N.Y. 2010) ........................................................................................ 19

*Guillen v. Marshalls of MA, Inc.*,
  841 F.Supp.2d 797 (S.D.N.Y.2012) ...................................................................................... 11

*Hall v. Guardsmark, LLC*,
  No. CIV.A. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) .................................. 10, 13

*Hinojos v. Home Depot, Inc.*,
  No. 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006)............................................ 12

*Hively v. Allis Chalmers Energy, Inc.*,
  Civ. No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013)................................................ 14

iii

*Karlo v. Pittsburg Glass Works, LLC*,
   880 F. Supp. 2d 629 (W.D. Pa. 2012) ...................................................................... 10

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018) ...................................................................... 20

*Kassman v. KPMG LLP*,
   No. 11 CIV. 03743 LGS, 2014 WL 3298884 (S.D.N.Y. July 8, 2014) ..................................... 14

*Kronick v. Bebe Stores, Inc*.,
   No. 07-4514, 2008 WL 4546368 (D.N.J. Oct. 2, 2008) ..................................................... passim

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc*.,
   No. CIV.A. 10-948, 2011 WL 6372852 (W.D. Pa. Dec. 20, 2011) .......................................... 20

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987) ............................................................................. 17

*Martin v. Citizens Fin. Grp., Inc*.,
   No. CIV.A. 10-260, 2013 WL 1234081 (E.D. Pa. Mar. 27, 2013) .......................................... 11

*Postiglione v. Crossmark, Inc*.,
   No. CIV.A. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012) ............................... 11, 14, 19

*Sloane v. Gulf Interstate Field Servs., Inc*.,
   No. 4:16-CV-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017) ................................... 5, 11

*Smith v. Merck & Co*.,
   No. CV132970MASLHG, 2016 WL 1690087 (D.N.J. Apr. 27, 2016) .................................... 14

*Smith v. Sovereign Bancorp, Inc*.,
   No. CIV.A. 03-2420, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) ............................... 5, 9, 13

*Symczyk v. Genesis Healthcare Corp.*,
   656 F.3d 189 (3d Cir. 2011) ............................................................................... 8

*Williams v. Owens & Minor, Inc*.,
   No. CIV. A. 09-00742, 2009 WL 5812596 (E.D. Pa. Oct. 9, 2009) ......................................... 9

*Williams v. Securitas Sec. Servs. USA, Inc*.,
   No. CIV.A. 10-7181, 2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) ......................................... 9

*Winks v. v. Virginia Dep't of Transportation*,
   No. 3:20-CV-420-HEH, 2021 WL 2482680 (E.D. Va. June 17, 2021) .................................... 11

iv

*Wright v. Lehigh Valley Hosp.*,
   No. CIV.A 10-431, 2010 WL 3363992 (E.D. Pa. Aug. 24, 2010)...................................... 13, 15

*Zavala v. Wal Mart Stores, Inc.*,
   691 F.3d 527 (3d Cir. 2012) ................................................................................................... 10

**Statutes**

29 U.S.C. § 216(b) ................................................................................................................... 10

## I.      INTRODUCTION

Plaintiffs have failed to demonstrate that the General Managers ("GMs") in their proposed nationwide collective are similarly situated as it relates to the Equal Pay Act ("EPA"). On the contrary, Plaintiffs ask that the Court automatically certify their collective based on other cases involving other facts in other jurisdictions as well as their own attorney-drafted declarations supported by conclusory statements and hearsay. But this Court has, deservedly, criticized automatic conditional certification.[1] To issue any kind of notice, especially nationwide notice, Plaintiffs must present a _factual_ showing "based on some substance."[2] This is particularly true where an employer's compensation policy is facially lawful, as is Speedway's multi-factor, gender-neutral compensation policy.[3] Because Plaintiffs' standard to obtain certification is not invisible, "courts have not hesitated to deny conditional certification when evidence is lacking."[4] When, as here, admissible evidence is all but nonexistent, Plaintiffs have not met their burden to justify notice, and conditional certification should be denied.

## II.     FACTUAL BACKGROUND

Speedway operates approximately 3,900 convenience stores in 36 states. _See_ Dkt. 44 at 8. Each store is individually managed by a GM who "serves as the leader and oversees the retail operation of a specific store [and] ensures that the store operates efficiently and in compliance with applicable federal, state and local laws and Company policies." Dkt. 44-10 (Responsibility Statement).

---

[1] _See Smith v. Sovereign Bancorp, Inc_., No. CIV.A. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003).
[2] _Bramble v. Wal-Mart Stores, Inc_., No. CIV.A.09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011).
[3] _Sloane v. Gulf Interstate Field Servs., Inc_., No. 4:16-CV-01571, 2017 WL 1105236, at *11 (M.D. Pa. Mar. 24, 2017).
[4] _Kronick v. Bebe Stores, Inc_., No. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008).

1

Speedway divides its stores into varying levels of "complexity" based on sales volume, labor hours, the size of the building and property, and other factors. *See* Deposition of Jessica McCoart ("McCoart Dep."), 29:14-23, 31:1-32:10, 66:19-67:5 (attached as **Exhibit A**); Deposition of Renee Schroll ("Schroll Dep."), 42:17-43:24, 63:8-64:2 (attached as **Exhibit B**). Level 1 stores have the lowest sales volume, number of labor hours per store, and number of employees per store while Level 6 stores have the highest sales volume, number of labor hours per store, and number of employees per store. *Id.* Speedway stores are also divided into districts and regions based on geographic location; GMs within the same district report to a shared District Manager ("DM"). Dkt. 44 at 9. DMs have between 12 and 20 stores in their district. *Id.* DMs report to Region Managers, who in turn report to Division Directors. *Id.*

Compensation for Speedway employees, including GMs, is guided by Speedway's Compensation Manual. Ex. A, McCoart Dep., 64:6-65:22. GM compensation will vary based on an individual's circumstances, including their store level, their tenure or experience level, the store's sales performance, the store's adherence to Speedway standards and safety requirements, competition for talent, and market differences in pay rates. *See* Ex. A, McCoart Dep., 81:10-82:7, 87:11-88:18, 90:14-91:11, 99:15-100:19, 103:12-104:19. Eligibility for GM bonus programs will depend on the prior performance of each GM's particular store. *Id.*, 93:17-94:15. With local approval (i.e., from a DM, Region Manager, or Division Director), particular GMs may be paid more than the rate specified in the compensation manual. *Id.*, 61:9-20, 74:8-75:8.

Plaintiff Nancy DeBlock[5] worked as a GM in New Jersey. Complaint, Dkt. 1, ¶ 35. She alleges her salary was "approximately $35,000 per year," which she alleges "was less than males who were working at Speedway as General Managers, and who were earning $10,000.00 to

---

[5] This case originally had two other Plaintiffs, Susan Ludwig and Sheila Carrasquillo. They were subsequently dismissed from the case as nonresponsive. Dkt. 41.

$15,000.00 more." *Id.*, ¶ 38. Ms. DeBlock claims she is aware of pay disparity at Speedway because she saw "a list of General Managers [sic] salaries." *Id.*

Plaintiffs posit, inaccurately, that Speedway "refused" to supply them requested pay records in discovery.[6] Given the sparseness (if not absence) of factual support for Plaintiffs' conditional certification motion, it is worth demonstrating that their failure to produce any pay records or non-speculative allegations of pay differences is a result of their own failure to pursue the materials, not Speedway's "refusal." On May 20, 2020, Plaintiffs served Speedway various discovery requests, including an interrogatory (Interrogatory No. 4) requesting an Excel spreadsheet of all female GMs and all male GMs identified by employee ID number, gender, store number, market or division, employment position, and rate and method of compensation. On July 17, 2020, Speedway served responses to Plaintiffs' discovery. In response to Interrogatory No. 4, Speedway objected to the voluminous nature of the request, especially given the procedural stage of the case. On July 22, 2020, Plaintiffs' counsel requested a meet-and-confer call. On July 27, 2020, Plaintiffs' counsel sent a meet-and-confer letter outlining their concerns with Speedway's discovery responses. Interrogatory No. 4 was lumped together with two other interrogatories, and Plaintiffs stated, "The pay disparity, number of stores and number of putative collective members are relevant to the issues in this action, please advise as to whether Speedway will supplement." Counsel conferred on August 3, 2020. Plaintiffs' counsel did not press for any particular response to Interrogatory No. 4. The discussion among counsel then turned to Plaintiffs' request for an extension of time on conditional certification briefing, then to the scheduling of depositions. After August 3rd, Speedway received no additional communications from Plaintiffs' counsel requesting

---

[6] Dkt. 44 at 14, fn. 25. Notably, Plaintiffs' footnote also flips the conditional certification burden, claiming Speedway was "invit[ed] . . . to disprove Plaintiffs' claims with their pay records." At conditional certification, it is *Plaintiffs* who must "prove," using facts rather than allegations, a sufficient similarity in their proposed collective to justify its certification. Here, they have not done so.

pay records or, more generally, written discovery. Plaintiffs never filed a motion to compel the records.

Nonetheless, on July 1, 2021, Plaintiffs moved to conditionally certify a proposed collective of "all female employees who are or have been employed by Defendant Speedway LLC, as salaried General Managers from three (3) years prior to the filing of this action until present." Dkt. 44, at 8. This opposition follows.

## III.    ARGUMENT AND AUTHORITIES

Plaintiffs have not made the requisite factual showing to warrant conditional certification. Inadmissible, individualized allegations of disparate pay from a handful of jurisdictions do not indicate a nationwide unlawful policy by Speedway that unites female GMs across the country. In fact, Plaintiffs' limited evidence indicates a collective action is inappropriate: because the allegations are specific to the individual opt-ins, defenses would be similarly specific and incapable of collective application. As a result, Plaintiffs' proposed collective would be unmanageable. Therefore, Plaintiffs' request for issuance of notice should be denied.

### a.  Standard of Review

As Plaintiffs' own authority makes clear, to obtain conditional certification, Plaintiffs must produce "evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523. This Court has explicitly stressed that considering the "similarly situated" determination at conditional certification to be essentially automatic "is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would

clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery." *Smith v. Sovereign Bancorp, Inc.*, No. CIV.A. 03-2420, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003); *see also Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011) ("The district court cannot function as a rubber stamp for any and all claims that come its way under this statute.").

As a result, Plaintiffs' burden "is not nonexistent" and their factual showing must "be based on some substance." *Bramble*, 2011 WL 1389510, at *4. This is particularly true where, as here, some discovery has already occurred. *See Williams v. Owens & Minor, Inc.*, No. CIV. A. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) (describing the standard used after discovery has commenced as "more stringent"). "Courts have not hesitated to deny conditional certification when evidence is lacking." *Kronick v. Bebe Stores, Inc.*, No. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008). Evidence is lacking when "each member's claim will hinge on his or her 'specific circumstances,'" rather than common evidence. *Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-7181, 2011 WL 3629023, at *1 (E.D. Pa. Aug. 17, 2011); *see also Bramble*, 2011 WL 1389510, at *4 ("The right to proceed collectively may be foreclosed where an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.").

### b. Plaintiffs misconstrue their burden at conditional certification and fail to surmount their initial hurdle of establishing that putative collective members are similarly situated to one another under a common unlawful policy.

Plaintiffs go to great lengths to describe their standard as all but invisible, devoting at least two entire sections of their briefing to minimizing their burden.[7] Dkt. 44 at Pt. I, IV. In fact, Plaintiffs suggest that the Court need not perform much of a conditional certification analysis at

---

[7] Indeed, one section of Plaintiffs' brief, titled "Plaintiffs Have More than Met the Low Burden Necessary for the Issuance of Notice.," contains no analysis at all. *See* Dkt. 44 at 20.

all because (1) a different collective of Speedway GMs was conditionally certified based on a different alleged violation of the FLSA in a different case in front of a different court,[8] and (2) a different collective of managers working for an entirely different company in an entirely different role in an entirely different industry were deemed "similarly situated" by a different Pennsylvania district court. *See id.* at 7. In doing so, Plaintiffs entirely sidestep the relevant inquiry at this stage.

The question is not whether there is *some* sort of similarity across their purported collective; "being similarly situated does not mean simply sharing a common status." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 538 (3d Cir. 2012). "Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* Therefore, "the thrust of the Court's inquiry at this juncture—i.e., at the conditional certification stage—is . . . whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) *with respect to their allegations that the law has been violated*." *Karlo v. Pittsburg Glass Works, LLC*, 880 F. Supp. 2d 629, 643 (W.D. Pa. 2012) (emphasis added). As a result, common, innocuous links such as shared employment manuals, shared authority of managers, and shared supervision are "of minimal utility" where they do not "streamlin[e] resolution of" the opt-ins' cases, meaning "liability and damages still need to be individually proven." *Zavala*, 691 F.3d at 538 (affirming district court's decision not to conditionally certify collective where individuals worked in "180 different stores in 33 states throughout the country," for dozens of different supervisors with "varying hours and for different wages").

Here, Plaintiffs simply have not indicated that they "together were victims of a common policy or plan that violated the" EPA. *Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL

---

[8] Plaintiffs' reliance on the *DaRosa v. Speedway LLC* case is particularly unpersuasive, given that the *DaRosa* collective was decertified on August 30, 2021 after the Court found, on a more developed record, GMs were, in fact, *not* similarly situated to one another. *See* Order, Dkt. 130, *DaRosa v. Speedway LLC*, No. 1:19-cv-10791-RGS (D. Mass. Aug. 30, 2021).

3580086, at *6 (W.D. Pa. Aug. 17, 2012). Instead, Plaintiffs have directed the Court to a handful of individualized allegations as to compensation under Speedway's gender-neutral compensation policy. Where, as here, "an employer maintains a formal policy of lawful compensation, plaintiffs must present 'substantial evidence that the employer, in fact, shirked its FLSA responsibilities." *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *11 (M.D. Pa. Mar. 24, 2017). A litany of courts have made clear that plaintiffs need to provide more than speculative allegations to demonstrate the illegality of a facially lawful policy, particularly where the policy is tailored to each employee and where plaintiffs seek to introduce a nationwide class. *See, e.g., Winks v. v. Virginia Dep't of Transportation*, No. 3:20-CV-420-HEH, 2021 WL 2482680, at *3 (E.D. Va. June 17, 2021) ("The decentralized and individualized nature of pay determinations alone is sufficient to demonstrate the absence of a common policy implemented throughout all of VDOT's offices."); *Abe v. Virginia Dep't of Env't Quality*, No. 3:20-CV-270, 2021 WL 1845324, at *2 (E.D. Va. Apr. 6, 2021) ("Although the plaintiffs allege they "were victims of a common policy or scheme or plan that violated the law," … their cases turn on individualized questions regarding their similarity to their comparators and whether any factors other than sex explain why DEQ paid the comparators more than the plaintiffs."); *Martin v. Citizens Fin. Grp., Inc*., No. CIV.A. 10-260, 2013 WL 1234081, at *6 (E.D. Pa. Mar. 27, 2013) ("Even if Plaintiffs' allegations are accepted as true, Defendants' policies do not appear to be a "single decision, policy, or plan," but rather policies and practices that "impacted individual plaintiffs in individual ways."); *Postiglione v. Crossmark, Inc*., No. CIV.A. 11-960, 2012 WL 5829793, at *6 (E.D. Pa. Nov. 15, 2012) ("The 31 named plaintiffs who would be in the amended class worked under 38 different supervisors in 25 different states. Despite bringing a sampling of named plaintiffs from across the country, Plaintiffs have not demonstrated the existence of a nationwide policy; they have only

7

demonstrated the lack of any such common policy."); *Guillen v. Marshalls of MA, Inc*., 841 F.Supp.2d 797, 801 (S.D.N.Y.2012), *adopted by*, 09 CIV. 9575 LAP GWG, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) ("Obviously, his pointing to a common policy at Marshalls regarding the job duties of ASMs provides no proof that other ASMs are performing non-exempt duties, particularly given that all policies and writings from Marshalls dictate just the opposite"); *Eng–Hatcher v. Sprint Nextel Corp*., No. 07 Civ. 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009) ("While the Plaintiff claims that Sprint's de facto policy causes dozens, if not hundreds, of Sprint managers in practice to violate Sprint's clear, lawful written policies, she merely presents her own deposition testimony as proof of these allegations."); *Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006) ("Plaintiffs ask the Court to conclude that a national policy exists based on limited assertions pertaining to a few stores. Plaintiffs do not point to a common policy or practice on a nationwide, or even statewide, basis.").

Plaintiffs have failed to supply sufficient, if any, evidence of a common illegal policy at Speedway. As described more fully below, they have produced a limited number of conclusory attorney-drafted declarations alleging that, *in practice*, Speedway's lawful policy was applied, apparently nationally, in a similar unlawful way. This is the exact type of inadequate presentation, from an inadequate number of geographic regions, criticized in the above cases.

Plaintiffs also inject allegations of a supposed failure of Speedway's to "audit" its pay practices. However, this argument fails to further their conditional certification effort for at least two reasons. First, this failure-to-audit theory, even if proven (which it was not), does not constitute a violation of the FLSA or EPA or a sufficient means to maintain a nationwide collective action. Indeed, Plaintiffs do not provide any authority whatsoever to indicate that it does. Second, deposition testimony from Speedway's employees indicated the company *does* perform routine

checks for compensation equity. Jessica McCoart testified that the compensation team "will perform routine audits on pay" to ensure employees are paid a market and merited rate. *See* Ex. A, McCoart Dep., 77:3-78:7, 102:19-103:3. The GM salary is "frequently" reviewed (i.e. "monthly, quarterly") to ensure Speedway is "paying GMs fairly" based on store complexity, consistency, exemption threshold, market rates, competition, and other factors. *Id.*, 99:5-100:9. That Speedway does not couch these audits as part of EPA compliance does not mean it is somehow violating the statute. As a result, Plaintiffs have failed to show a similar unlawful policy across their proposed collective.

### c.   What little factual support Plaintiffs provide is unreliable and insufficient to justify conditional certification.

Plaintiffs' employee-specific and hearsay-heavy declarations, combined with lawful corporate policies of Speedway, do not adequately support their request for notice. To satisfy the "similarly situated" standard, a plaintiff must provide "evidence, beyond pure speculation, that Defendant's alleged policy affected other employees." *Smith v. Sovereign Bancorp, Inc.*, No. 03–2420, 2003 WL 22701017, at *3 (E.D.Pa. Nov.13, 2003). Contrary to Plaintiff's assertion, this Court has held that "only admissible evidence may be considered when deciding an FLSA conditional class certification motion." *Wright v. Lehigh Valley Hosp.*, No. CIV.A 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010). To permit FLSA plaintiffs to support certification through inadmissible evidence like hearsay "would in effect result in automatic preliminary certification, which is at odds with the modest factual showing standard." *Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL 3580086, at *11 (W.D. Pa. Aug. 17, 2012).

Here, Plaintiffs have provided the Court with very little in terms of evidence: a few quotes from depositions (of which Named Plaintiff DeBlock is the only deponent who would be a member of the collective; the other deponents are Speedway corporate representatives); five form

9

declarations from opt-ins; a few pages from Speedway's compensation manual; and Speedway's GM responsibility statement. The insufficiency of this evidence is apparent when compared to Plaintiffs' authority. *See, e.g.*, *Smith v. Merck & Co.*, No. CV132970MASLHG, 2016 WL 1690087, at *5 (D.N.J. Apr. 27, 2016) (supporting conditional certification with expert report comparing male and female employee compensation); *Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2014 WL 3298884, at *6 (S.D.N.Y. July 8, 2014) (same with statistical evidence); *Hively v. Allis Chalmers Energy, Inc.*, Civ. No. 13-106, 2013 WL 5936418, at *4 (W.D. Pa. Nov. 5, 2013) (same with declarations from 15% of the thirty-person collective). Further, even had Plaintiffs provided more substantial evidence, such as expert reports, it may not have been enough to establish the requisite factual showing. *See Babin v. Stantec, Inc.*, No. CIV.A 09-1160, 2010 WL 3363920, at *4 (E.D. Pa. Aug. 25, 2010).

That Plaintiffs devote pages of their briefing to minimizing their burden is unsurprising, as they have failed to produce sufficient evidence even under a modest standard. Nearly all of Plaintiffs' evidence is conclusory. The declarations, specifically, are problematic for several reasons. First, they are entirely speculative, with key, foundational components supporting Plaintiffs' EPA claim simply alleged formulaically without supporting context or evidence.[9]

Second, they are plainly attorney-drafted. While some overlap in declaration format and content may be inevitable when conducting multiple interviews, the level of word-for-word

---

[9] *See, e.g.*, Dkt. 44-3, ¶¶ 7-8 ("I was consistently paid less than my male colleagues with the same title performing the same job responsibilities. Speedway had no basis, other than gender, to pay me differently than its male General Managers."), Dkt. 44-4, ¶ 2 ("Speedway had no basis, other than gender, to pay me differently than its male General Managers. I say this because, all General Managers employed by Speedway have substantially the same duties. Essentially, every task that I performed was also performed by Speedway's other General Managers, regardless of their gender."), Dkt. 44-6, ¶¶ 2-3 ("I was consistently and willfully paid less than my male colleagues with the same title performing the same job responsibilities. Speedway had no basis, other than gender, to pay me differently than its male General Managers."), Dkt. 44-7, ¶ 3 ("I was paid less than my male colleagues with the same title performing the same job responsibilities. I do not think that Speedway had any basis, other than gender, to pay me differently than the male General Managers."),

repetition across Plaintiffs' declarations strips away any persuasiveness they may have possessed. *See Postiglione v. Crossmark, Inc.*, No. CIV.A. 11-960, 2012 WL 5829793, at *5 (E.D. Pa. Nov. 15, 2012) (deeming unreliable declarations that "seem[ed] to be derived from forms and not to have been individually drafted for the employees signing them."). The declarations include the same general components with virtually identical wording, beginning with hiring position, time, and location, then adding a near-identical list of duties in a near-identical order; near-identical articulations of pay differentials and uniformity of GM duties (with little to no supporting facts); near-identical allegations of being able to move from one store to another without re-training; a rote recitation of belief that Speedway pays all of its GMs on a salary basis;[10] similar vague allegations of disparate pay (of which only one names a comparator by first and last name); near-identical unsupported allegations that each opt-in somehow knows that *all* GMs perform the same duties; a near-identical statement of not recalling a survey or audit of pay practices; and a vague statement of other GMs that might opt-in, often including only a first name and never including any other identifying information. *See* Dkt. 44-3, 44-5, 44-7.

Third, despite Plaintiffs' request for a nationwide collective, Plaintiffs produced allegations from GMs in only four states. *See* Dkt. 44-3 (Ohio); Dkt. 44-4 (Indiana and North Carolina); Dkt. 44-5 (New York); Dkt. 44-6 (North Carolina). Where "Plaintiffs do not make even a modest showing of evidence, beyond pure speculation, that Defendant's alleged policies were applicable" to the other employees in their collective, certification is improper. *Kronick*, 2008 WL 4546368, at *3. Plaintiffs cannot "assert generalized assumptions and effectively assume a similar situation for themselves and the putative class." *Id.*; *see also Wright*, 2010 WL 3363992, at *4 (emphasizing plaintiff's failure to name another similar employee, let alone produce any pay stubs, time sheets,

---

[10] A recitation, it is worth noting, that is inaccurate, as Speedway pays some of its GMs hourly. *See* Dkt. 44-10 (Responsibility Statement, listing subgroup of hourly managers); Deposition of Jessica McCoart, 34:8-35:5.

or other information that would assist the Court in its determination). Even where Plaintiffs attempt to name additional potential opt-ins, they provide virtually no information about them. *See* Dkt. 44-3, ¶ 15; Dkt. 44-5, ¶ 17, Dkt. 44-7, ¶ 18.

Fourth, the declarations are replete with inadmissible evidence, namely hearsay. "Reliance on limited anecdotal hearsay [alleging a violation of defendant's facially-lawful policies] does not persuasively show that [a defendant] has a common plan or practice" that violates the law. *Eng--Hatcher v. Sprint Nextel Corp.*, No. 07 CIV 7350, 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009). Several allegations going to the heart of opt-ins' pay-related claims are presented as statements made by other people.[11] Worse still, in several instances the alleged speakers of the hearsay statements are not even identified by first and last name. *See* Dkt. 44-3, ¶ 11 ("Anthony [Last Name Unknown]"), ¶ 14 ("Dan [Last Name Unknown"); Dkt. 44-4, ¶ 3 ("Troy [Last Name Unknown]"). Because this evidence cannot be considered for purposes of conditional certification, Plaintiffs' evidentiary record is even more bare than it appears at first glance.

Perhaps anticipating the sparsity of their own evidence, Plaintiffs posit—inaccurately—that Speedway simply "refused" to provide them with pay records. This is inaccurate. Plaintiffs requested a large swath of pay records, with specific detail, through an interrogatory. Speedway objected to the interrogatory but agreed to a meet and confer discussion regarding discovery. In a

---

[11] *See, e.g.*, Dkt. 44-3, ¶¶ 11 ("was informed by Anthony [Last Name Unknown], my District Manager that my salary was not negotiable, and that these things (meaning salaries) were set by corporate."), 14 ("My then District Manager, Adam Miller, said he would pass it up the chain. . . [The HR Manager in Springfield, Ohio] informed me that I was making all I could as a GM and that they only make pay decisions at the end of the year with corporate approval. . . then went to the Region Manager, Dan [Last Name Unknown] and complained that my pay was low, and he explained to me that I was getting paid the most I could and that he saw no reason to increase my pay. After that meeting the DM emailed me to let me know that I could not apply to fill any other positions in the store and then they fired me a week later."); Dkt. 44-4, ¶ 3 ("My District Manager Troy [Last Name Unknown] indicated that he thought I deserved a raise and informed me that he tried to get me a higher pay rate, but that corporate would not approve it."); Dkt. 44-5, ¶¶ 6 ("The District Manager that hired me explicitly told me that he had to get my pay rate from the Region Manager and that the hiring manager at Corporate HR had to approve it before she could offer me the position."), 10 ("I was informed by Justin S. [Full Last Name Unknown], my District Manager that he could not set my rate of pay and that corporate had to do it.").

meet-and-confer letter sent July 27, 2020, Plaintiffs grouped the pay-record interrogatory with two other requests, arguing only that "the pay disparity . . . [is] relevant to the issues in this action" and asking that Speedway "please advise as to whether Speedway will supplement." Counsel conferred on August 3, 2020 and, despite receiving additional time for conditional certification briefing, Plaintiffs did not thereafter move to compel pay records or any other factual evidence to support their collective. They should not be rewarded for their failure to pursue now. It is Plaintiffs' burden to produce a factual, non-speculative showing; they have declined to do so. As a result, their motion to conditionally certify a collective should be denied.

> **d. Other factors, namely the individualized defenses at issue and the unmanageability of the proposed collective, also counsel against conditional certification.**

Plaintiffs request an unmanageable collective that would quickly devolve into mini-trials assessing the lawfulness of each individual GM's pay. As a result, the issuance of notice is improper. "Courts have examined a number of factors in the conditional certification analysis," including but not limited to: the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; and fairness and procedural concerns. *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987). In the case at hand, each of these factors, alone and considered together, suggests conditional certification is inappropriate.

Speedway GMs work in different settings at different rates of pay. *See Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification where store managers' responsibilities varied "in number and types of employees supervised and in types of stores managed-in terms of physical space, sales volume and geographic location"). Plaintiffs are not "similarly situated" where the existence, let

alone the details of the merits, of their EPA claim will differ based on their job responsibilities. *See Evancho v. Sanofi-Aventis U.S. Inc.*, No. CIV. A. 07-2266 (MLC, 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007). Here, GMs work in stores across six different complexity levels. Whether a GM works in a Level 6 or a Level 1 store will affect, among other things, the number of employees she supervises, the number of labor hours those employees work, the size and layout of the store she runs, and the volume of sales she handles. *See* Ex. A, McCoart Dep., 29:14-23, 31:1-32:10, 66:19-67:5; Ex. B, Schroll Dep., 42:17-43:24, 63:8-64:2.  Critically, for purposes of this case, a store's complexity level—along with other factors such as a GM's experience and particular market—have a direct influence on a GM's pay. *See* Ex. A, McCoart Dep., 81:10-82:7, 87:11-88:18, 90:14-91:11, 99:15-100:19, 103:12-104:19.   Yet Plaintiffs have provided no evidence whatsoever of similarity in purported pay disparity across store level.

Nor have Plaintiffs demonstrated similarity across store location. Including Plaintiff DeBlock's New Jersey-based allegations from the Complaint (which, it is worth emphasizing, do not count as non-conclusory evidence), Plaintiffs have alleged EPA noncompliance in only five states. *See* Dkt. 44-3 (Ohio); Dkt. 44-4 (Indiana and North Carolina); Dkt. 44-5 (New York); Dkt. 44-6 (North Carolina). But Speedway conducts operations in thirty-six states, and Plaintiffs seek to include all thirty-six states in their collective. *See* Dkt. 44, at 8 (proposing collective of "all female employees who are or have been employed by Defendant Speedway LLC, as salaried General Managers from three (3) years prior to the filing of this action until present") (emphasis added).

Further, Plaintiffs' failure to point to a singular unlawful policy practiced by Speedway precludes Speedway from presenting any kind of singular defense. Instead, they have produced largely-inadmissible allegations of individualized disparate pay. To the extent this indicates any

problematic practices by Speedway at all (which Speedway contests), it suggests these practices "were instituted by individual supervisors" or in the context of individual hiring circumstances, not on a collective basis. *See Postiglione*, 2012 WL 5829793, at *7.

Plaintiffs make much of Speedway's corporate structure and policies and argue these policies suggest GMs must perform an identical job subject to a collective EPA violation. This is not the case. Where, as here, "Plaintiffs ask the Court to take a wide-angle view, suggesting that the manner in which Defendants establish and adjust salaries is a 'single' or 'centralized' process," they "overlook[] each of the individualized considerations that factors into compensation decisions—decisions which occur at multiple different levels of review." *Ahad v. Bd. of Trustees of S. Illinois Univ.*, No. 15-CV-3308, 2019 WL 1433753, at *7 (C.D. Ill. Mar. 29, 2019) ("Plaintiffs have not shown how the facially gender-neutral Compensation Plan could have created the disparate compensation."). "Essentially, plaintiff's argument on this point boils down to the proposition that where there is a corporate management structure that applies to all regions of the country—as is likely true for many, if not most, companies that operate nationally—any single employee may plausibly assert that employees throughout the country are similarly situated with respect to that employee's [pay] even if [disparate pay practices] contravene the company's stated requirements." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 469, 477-78 (S.D.N.Y. 2010) (rejecting overgeneralized allegations of day-to-day job duties at the conditional certification stage of an FLSA overtime action). In other words, Speedway being a nationwide corporation with corporate pay policies does not automatically grant any and all employees the right to a certified EPA collective.

In fact, in reality, Plaintiffs' claim would require individualized defenses, tailored to the factual reality of each GM's pay. "The highly individualized process used to determine

compensation will necessarily require [Speedway] to present individualized evidence as to each Plaintiff in order to show that 'any factor other than sex' accounts for [any] differential in compensation." *See Ahad*, 2019 WL 1433753, at *7 (involving compensation policy that considered "a number of factors unique to each Plaintiff, including job responsibilities, productivity, and market forces"); *see also Bond v. Nat'l City Bank of Pennsylvania*, No. 05CV0681, 2006 WL 1744474, at *4 (W.D. Pa. June 22, 2006) ("An examination of the claims asserted by [Plaintiffs] would require a fact-intensive, individualized inquiry of the job position, job duties, work history, and alleged individual [location] policies of every prospective plaintiff.").

The individualized nature of Speedway's defenses would make a collective action "inherently unfair to both sides," as it would "base one Plaintiff's situation on another's potentially dramatically different situation." *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc*., No. CIV.A. 10-948, 2011 WL 6372852, at *8 (W.D. Pa. Dec. 20, 2011). This would "result in a situation" in which "judicial economy will be hindered rather than promoted by certification," with "representative evidence simply" unworkable. *Id.* Individualized evidence in a representative action quickly makes the collective unmanageable. Simply put, Plaintiffs cannot "shoehorn the opt-ins" into an EPA collective that is "impractical if not impossible" to maintain. *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 288–90 (S.D.N.Y. 2018). Because Plaintiffs' claims would result in an unworkably individualized collection of claims, notice should be denied.

## IV.    CONCLUSION

Because Plaintiffs have failed to establish the requisite factual showing that Speedway's female GMs are similarly situated as to a purported nationwide violation of the EPA, Speedway respectfully requests that conditional certification be denied.

16

Dated:  August 30, 2021                    Respectfully submitted,


                                           */s/ Kristen A. Page*
                                           Margaret C. O'Neill, Esq.
                                           PA Bar # 306676
                                           Shook, Hardy & Bacon L.L.P.
                                           2001 Market Street
                                           Suite 3000
                                           Philadelphia, PA  19103
                                           Phone:  (215) 575-3111
                                           Fax:  (215) 278-2594
                                           moneill@shb.com

                                           William C. Martucci, Esq. (admitted pro hac vice)
                                           Shook, Hardy & Bacon L.L.P.
                                           1800 K Street NW, Suite 1000
                                           Washington, D.C.  20006
                                           wmartucci@shb.com

                                           Kristen A. Page, Esq. (admitted pro hac vice)
                                           Shook, Hardy & Bacon L.L.P.
                                           2555 Grand Boulevard
                                           Kansas City, MO  64108
                                           kpage@shb.com

                                           **Attorneys for Defendant**

17

## **CERTIFICATE OF SERVICE**

I, Margaret C. O'Neill, certify that on this 30th day of August, 2021, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will send electronic notification of such filing to all counsel of record.


*/s/ Margaret C. O'Neill*
Margaret C. O'Neill