**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NANCY DE BLOCK, individually** | : | |
| **and on behalf of a collective of others** | : | |
| **similarly situated,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-824** |
| | : | |
| **SPEEDWAY LLC** | : | |

---

**McHUGH, J.**                                                               **October 15, 2021**

## <u>MEMORANDUM</u>

This is an action brought under the Equal Pay Act ("EPA"). Plaintiff Nancy De Block now moves to certify conditionally a collective action in connection with her claims alleging that Speedway LLC violated the Act by paying salaried female general managers less than their male counterparts. A grant of conditional certification is an exercise of this Court's discretionary authority to oversee a notice mechanism by which similarly situated members of a proposed collective can "opt-in" to the collective action. Given its purpose, and because it occurs prior to substantial fact discovery, the persuasive burden on the plaintiffs at this stage is lenient and only requires a "'modest factual showing' … of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). If discovery upends this preliminary determination, defendants can later move to decertify the collective at which point plaintiffs will have a higher standard of proof to surmount. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012). As explained below, I conclude that Plaintiff has met her burden at the preliminary stage to make a "modest factual showing" of similarly situated employees, and I will therefore grant conditional certification of the collective.

I.      **Legal Standard**

The Fair Labor Standards Act ("FLSA") provides a specific enforcement mechanism for EPA claims, permitting an aggrieved employee to bring a collective action on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). This mechanism is similar to a Rule 23 class action, except that it requires other aggrieved employees to affirmatively "opt-in" to the collective action. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). "The district court has discretion to authorize notice to potential opt-in plaintiffs by conditionally certifying the matter as a collective action." *Pendleton v. First Transit, Inc.*, No. CV 20-1985, 2021 WL 3671996, at *1 (E.D. Pa. Jan. 13, 2021) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Symczyk*, 569 U.S. at 75. "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle*, 842 F.3d at 224.

Conditional certification is the first step of a two-step process to certifying collective actions. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017). At the first step, the court makes "a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 192. The standard for this determination is a "'modest factual showing' standard, [where] a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193. This is a "fairly lenient standard." *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 729 F.3d 239, 243 (3d Cir. 2013). "The Court *does not,* however, consider the merits of the dispute; the plaintiff must demonstrate only that the potential class members' positions are similar, not identical, to her own." *Diabate v. MV Transp. Inc.*, No. CIV.A. 14-857, 2015 WL 4496616, at *6 (E.D. Pa. July 20, 2015). In the first stage the District Court determines "*whether*

2

'similarly situated' plaintiffs do in fact exist, while at the second stage, the District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Zavala*, 691 F.3d at 536 n.4 (emphasis in original). Thus, even with the grant of the present motion, the Defendant will still have an opportunity to challenge the certification after the opt-in process and the development of the factual record, at which point the Plaintiff will bear the burden under a preponderance of the evidence standard to show that the members of the collective are subjected to a "common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538.

**II.**   **Discussion**

A.  Conditional Certification of the Collective

Plaintiff De Block seeks collective certification for claims under the EPA, 29 U.S.C. § 206(d)(1), alleging that Defendant Speedway LLC "failed to pay their female General Managers the same as their male General Managers, despite performing substantially the same work under equal working conditions." ECF 44, at 6. The relevant provision of the EPA specifically provides that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

§ 206(d)(1). Thus, the burden here is on the Plaintiff to "produce some evidence" that other similarly situated female General Managers at Speedway exist who may have been subject to the same discriminatory pay practice alleged against Speedway. *See Symczyk,* 656 F.3d at 193.

In support of this motion, Plaintiff has submitted her own deposition testimony, ECF 44-2, the sworn declarations of five present or former female Speedway general managers willing to

opt-in to the proposed collective,[1] ECF 44-3, 44-4, 44-5, 44-6, 44-7, two 30(b)(6) deposition transcripts of Speedway representatives, ECF 44-8, 44-9, a "Responsibility Statement" for the general manager position at Speedway, ECF 44-10, and Speedway's "Compensation Manual," ECF 44-11 (under seal). While the amount of evidence here is not overwhelming, it is enough for Plaintiff to meet the "modest factual showing" standard.

Plaintiff has shown sufficient facts for a conditional finding that salaried Speedway general managers are similarly situated with regards to the allegations, both by having similar duties and responsibilities across Speedway stores and by being subject to a common compensation policy. The Responsibility Statement for the general manager position lists 26 detailed responsibilities that appear to be shared by all general managers; 17 identical educational, experiential, skill, and additional requirements; and a further 9 "preferred managerial attributes" shared by the position. ECF 44-10, at 2. The job description is noted as being "intended to describe the general nature and level of the work being performed by individuals assigned to this job." ECF 44-10, at 2. Speedway's 30(b)(6) representative Renee Schroll, a human resources manager for the company, confirmed in deposition testimony the similarity of duties, responsibilities, and qualifications for general managers at Speedway nationwide. ECF 44-9, at 5-13. The declarations submitted by the putative opt-ins are also consistent with the Responsibility Statement and Ms. Schroll's testimony. *See* ECF 44-3 ¶ 2, 44-4 ¶ 10, 44-5 ¶ 2, 44-6 ¶ 12, 44-7 ¶ 2.[2]

---

[1] Speedway generally challenges the reliability of the declarations which contain similar structures and paragraphs and which they presume were drafted by attorneys. *See* ECF 48, at 10-11. As a practical matter, declarations are regularly prepared by attorneys for the purposes of litigation using standard forms and thus these features of declarations are not in themselves indicia of unreliability. These particular sworn declarations contain allegations specific to each opt-in including their salary, where and when they worked, their knowledge regarding specific male colleagues paid at a higher salary, and their knowledge of the duties they performed and observed others performing. Despite also including some conclusory or identical paragraphs, these declarations largely confirm other submitted evidence and do not conflict with it in any substantial way. They are thus sufficiently reliable and credible to ground a motion for conditional certification and its "modest factual showing" standard. *See Jordan v. Meridian Bank,* No. CV 17-5251, 2019 WL 1255067, at *8 (E.D. Pa. Mar. 19, 2019).

[2] The Responsibility Statement and the Compensation Manual, as confirmed by Speedway's 30(b)(6) representatives, apply broadly to the United States. *See* ECF 44-8, at 2; ECF 44-9, 4-8. And Plaintiff and opt-ins represent 6 states among the 6 of them. *See* ECF 44-2, at 3 (New Jersey); ECF 44-3 ¶ 4 (Ohio); ECF 44-4 ¶ 1 (Indiana and North Carolina); ECF 44-5 ¶ 1 (New York); ECF 44-6 ¶ 1 (North

There appears to be some variation in the complexity of management tasks based on the size of the Speedway location, categorically expressed as the "level" of the store, ECF 44-10, at 3, on which point Defendant argues that "Plaintiffs have provided no evidence whatsoever of similarity in purported pay disparity across store level," ECF 48, at 14. Although I note that the record on this point is presently thin and should be further developed in anticipation of the second-step decertification motion, Plaintiff has still made out the "modest factual showing" that individuals employed as salaried general managers perform jobs of "equal skill, effort, and responsibility, and which are performed under similar working conditions." § 206(d)(1). This is addressed briefly in Plaintiff De Block's deposition, where she states that she was doing the same work as "Rick," who had less experience than her and who worked at a smaller Speedway location than her, and yet was still being paid less than him. ECF 44-2, at 9-10. It is also addressed in several opt-in declarations that discuss a practice of rotating Speedway managers among various stores without adjustments to their pay or a difference in their responsibilities. *See, e.g.,* ECF 44-3 ¶ 4; ECF 44-4 ¶¶ 1, 4-6; ECF 44-5 ¶ 5; ECF 44-6 ¶ 1, 6-8; ECF 44-7 ¶ 1-2, 5, 8.

Plaintiff and opt-ins also allege similar harms and seek similar relief. Specifically, all contend that they were paid less than their male colleagues despite there being no substantial differences in experience, tenure, or responsibilities that would justify such a pay differential. *See* ECF 44-2, at 2-18; ECF 44-3 ¶¶ 7-8, 9, 12, 14; ECF 44-4 ¶¶ 2-3, 9; ECF 44-5 ¶¶ 3, 12-14; ECF 44-6 ¶¶ 2, 10-11; ECF 44-7 ¶¶ 3, 9-14.[3] And all are seeking, and would be entitled to, similar relief

---

Carolina); ECF 44-7 ¶ 1 (South Carolina). "This is more than enough to conditionally certify a national class." *Essex v. Children's Place, Inc.*, No. CV 15-5621, 2016 WL 4435675, at *6 (D.N.J. Aug. 16, 2016).

[3] Speedway challenges the admissibility of several statements in the opt-in declarations where declarants claimed that Speedway supervisors denied them raises or pay equity with male colleagues. *See* ECF 48, at 12. These statements are not offered for the truth of the matter asserted, but instead for the impact they had on the affiants as to the denial of their requests, and do not constitute inadmissible hearsay under FRE 801(c)(2).

Even if some statements in the declarations were hearsay, I would find them admissible for the limited purpose of this motion. "[T]he Third Circuit has not directly addressed whether declarations containing hearsay are admissible for purposes of conditional certification." *Jordan*, 2019 WL 1255067, at *8. But I find the reasoning of other judges in the Eastern District of Pennsylvania to be persuasive "that evidence need not be admissible at trial to be considered at the conditional certification stage, where the evidentiary burden is slight, and where a court does not assess the merits but simply determines whether

if the claims were proven, which, among other things, would include appropriate backpay and injunctive relief. ECF 1, at 10-11.

Defendant Speedway further disputes whether Plaintiff has made a sufficient showing to conditionally find that a common policy of discrimination as alleged by Plaintiff exists, posing its facially neutral compensation policy as a presumption to be overcome. This objection, however, goes to the merits of Plaintiff's case, not the appropriateness of collective certification. The Third Circuit's opinion in *Zavala* is instructive here. Although *Zavala* involved a second-stage decertification, and thus a stricter standard applied to the collective action determination, 691 F.3d at 537, the opinion by Chief Judge Smith helps draw out relevant factors to be considered by the District Court in both the first and second stage determinations:

> whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* at 536–37. These factors are non-exhaustive, but they share a focus on how the proposed collective members *themselves* are situated with respect to the alleged illegal practice. They do not require plaintiffs to prove the practice itself for the purposes of certification. *See id.* at 538 ("Being similarly situated … means that one is subjected to some common employer practice that, *if proved*, would help demonstrate a violation of the FLSA.") (emphasis added); *see also In re Citizens Bank, N.A.*, No. 19-3046, --- F.4th ---, 2021 WL 4538647 (3d Cir. Oct. 5, 2021) (defining the "main factual question in the FLSA collective action" as whether the defendant "had a policy or practice that caused" the violation complained of).

Defendant cites a number of cases where individualized factors or defenses defeat a finding of similar situatedness as to an alleged violation. I do not find them persuasive here. First, many of these cases were decided at the second stage of the certification process, after significant factual

---

there is modest evidence of a common policy or practice." *Alvarez v. BI Inc.*, No. CV 16-2705, 2018 WL 2288286, at *7 n.5 (E.D. Pa. May 17, 2018); *see also Jordan* at *8; *Kyem v. Merakey USA*, No. CV 19-5577-KSM, 2021 WL 1732501, *5 n.12 (E.D. Pa. Apr. 30, 2021).

discovery had occurred and a higher evidentiary burden for the plaintiffs was in play. *See, e.g., Martin v. Citizens Fin. Grp. Inc.*, No. CIV.A. 10-260, 2013 WL 1234081 (E.D. Pa. Mar. 27, 2013); *Abe v. Virginia Dep't of Env't Quality*, No. 3:20-CV-270, 2021 WL 1845324 (E.D. Va. Apr. 6, 2021); *Ahad v. Bd. of Trustees of S. Illinois Univ.*, No. 15-CV-3308, 2019 WL 1433753 (C.D. Ill. Mar. 29, 2019). Second, for those that were decided at the conditional, first stage, there were detailed materials in the record to substantially undermine the reliability of the plaintiffs' evidence that the proposed collective was similarly situated. *See, e.g., Postiglione v. Crossmark, Inc.*, No. CIV.A. 11-960, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012); *Winks v. Virginia Dep't of Transportation*, No. 3:20-CV-420-HEH, 2021 WL 2482680 (E.D. Va. June 17, 2021); *Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012). In contrast, Defendant's limited citations to the testimony of its 30(b)(6) representatives does not provide such granular detail as to differentiation in job duties or create such meaningful contradictions so as to render Plaintiff's evidence unreliable.[4]

Taking the record as a whole, I note that the Speedway Compensation Manual describes a compensation policy that is commonly applicable to the pay grades for salaried general managers—pay grades 4, 5, and 6 for purposes of this action, ECF 44-11 (under seal)—which was confirmed by Speedway's 30(b)(6) representative Jessica McCoart, a member of Speedway's human resource department involved with corporate compensation, ECF 44-8, at 2-10. Every pay grade under the compensation policy has a midpoint benchmarked to a market rate and, with some exceptions, all employees assigned a specific pay grade are paid between 80% and 120% of that midpoint. *See* ECF 48-2, at 9-12 (testimony of Jessica McCoart); ECF-11, ¶ I, V.C (requiring

---

[4] There is an underlying discovery impasse that both sides seek to exploit. The disputed discovery materials are characterized by the Plaintiff as "pay data for the GM position," ECF 53, at 9 n.4, and by the Defendant as "an Excel spreadsheet of all female GMs and all male GMs" with related employment, location, and compensation information, ECF 48, at 8. Speedway objected to production, and, although the parties attempted to resolve the issue, Plaintiff has not moved to compel. Speedway is correct that it does not bear the burden of proof at this stage, but its unwillingness to produce seemingly relevant and potentially exculpatory documents should not confer a tactical advantage at this preliminary stage. Conversely, one wonders why Plaintiff failed to pursue the issue with the Court. For present purposes, there is nothing substantive for me to consider in this regard, and absent a motion no discovery dispute to resolve.

senior VP approval for pay outside those bounds). Speedway contends that this window permits variations "based on an individual's circumstances, including their store level, their tenure or experience level, the store's sales performance, the store's adherence to Speedway standards and safety requirements, competition for talent, and market differences in pay rates." ECF 48, at 2. That may ultimately prove to be the case, but conditional certification will permit discovery to proceed so that the parties can develop a factual record to determine whether Speedway applies this facially neutral policy in a non-discriminatory manner or not.[5] For the purposes of an anticipated decertification motion specifically, the question for the Court and the burden on the Plaintiff by a preponderance of the evidence will be whether Plaintiff and opt-ins are in fact similarly situated or whether the additional factors identified by the Defendant are exhaustive of the pay differentials alleged by the Plaintiff and the opt-ins.

B. Notice to the Collective and Consent to Join Form

Plaintiff provides a proposed notice and proposed consent to join form and requests an order for Speedway to produce a list of all employees who meet the collective action class definition within 14 days. Plaintiff also requests that the notice be conspicuously posted in all stores. Finally, Plaintiff requests an order on the due dates for the consent forms. Defendant Speedway has not addressed any of these issues in its briefing.

The Court has significant discretion over the management of a collective action notice in order to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Nevertheless, "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.* To facilitate this, the parties are directed to meet and confer regarding the proposed notice, consent form, and its attendant mechanisms of information exchange and opt-in, and resubmit the proposed notice plan, with any necessary briefing or

---

[5] Both parties also briefed the absence of any Speedway audits of its compensation policy to determine if it was being applied in a gender-neutral manner. Such arguments might have relevance to a merits analysis, but shed no light on whether the collective was similarly situated with respect to the discriminatory practices alleged.

objections, to the Court for review. Such submission shall be made within twenty-eight (28) days of the order accompanying this memorandum.

**III.**   **Conclusion**

For the reasons set forth above, Plaintiff's motion for conditional certification will be granted. Plaintiff's counsel Rebecca S. Predovan, Marc S. Hepworth, Charles Gershbaum, and David A. Roth from Hepworth Gershbaum & Roth PLLC and Derrek William Cummings from Weisberg Cummings P.C. will be appointed counsel for the conditionally certified collective. And the parties will meet and confer over the notice plan and submit said plan along with any necessary briefing to the Court for review. An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge

9