**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NANCY DE BLOCK, individually and on
behalf of a collective of others similarly-
situated,

               Plaintiffs,

v.

SPEEDWAY LLC,

               Defendant.

Case No.: 2:20-cv-00824-GAM

The Honorable Gerald A. McHugh

[Electronically Filed]

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION TO APPROVE COLLECTIVE
<u>ACTION SETTLEMENT AND ATTORNEYS' FEES</u>**

Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca S. Predovan
HEPWORTH GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, NY 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
Mhepworth@hgrlawyers.com
Cgershbaum@hgrlawyers.com
Droth@hgrlawyers.com
Rpredovan@hgrlawyers.com

Derrek William Cummings
Larry A. Weisberg
WEISBERG CUMMINGS P.C.
2704 Commerce Dr., Suite B
Harrisburg, PA 17110
(717) 238-5707
Lweisberg@weisbergcummings.com
Dcummings @weisbergcummings.com

**Attorneys for Plaintiffs and Opt-in Plaintiffs**

## TABLE OF CONTENTS

Introduction ........................................................................................................1

Settlement Terms ...............................................................................................1

Facts and Procedural History .........................................................................3

Argument .............................................................................................................4

I.     The Standard and the One-Step Procedure for FLSA Opt-In
       Settlement Approval ............................................................................ 4

II.    The Putative Opt-In Class Members are Similarly Situated.................. 6

III.   This Settlement Resolves a Bona Fide Dispute ................................... 7

IV.    The Proposed Settlement Is Fair and Reasonable............................... 8

V.     Public Policy Favors Settlements......................................................... 10

VI.    Substantial Obstacles Exist if the Litigation Continues, and the
       Settlement Offers Substantial, Immediate Relief .............................. 10

VII.   This Was a Complex and Potentially Lengthy Case.......................... 12

VIII.  The Parties and Their Counsel Support the Settlement ................... 12

IX.    The Named Plaintiff Should Receive a Service Award .................... 12

X.     Plaintiffs' Counsel Should be Awarded Their Fees and Expenses........ 15

Conclusion..........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acevedo v. BrightView Landscapes, LLC,*
   2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ...........................................................................6

*Altenbach v. Lube Ctr., Inc.,*
   No. 08 Civ. 2178, 2013 WL 74251 (M.D. Pa. Jan. 4, 2013) ..................................................5

*Arrington v. Optimum Healthcare IT, LLC.,*
   2018 WL 5631625 (E.D. Pa. Oct. 31, 2018)........................................................................17

*Austin v. Pennsylvania Dep't of Corr.,*
   876 F. Supp. 1437 (E.D. Pa. 1995) ........................................................................................5

*Beckman v. KeyBank, N.A.,*
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................................5

*Boone v. City of Philadelphia,*
   668 F. Supp. 693 (E.D. Pa. 2009) ........................................................................................17

*Brown v. TrueBlue, Inc.,*
   2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) .......................................................................6

*In re Cendant Corp. PRIDES Litig.,*
   243 F.3d 722 (3d Cir. 2001)...........................................................................................16, 17

*In re Chickie's & Pete's Wage & Hour Litig.,*
   2014 WL 911718 (E.D. Pa. Mar. 7, 2014).............................................................................1

*Collins v. Sanderson Farms, Inc.,*
   568 F. Supp. 2d 714 (E.D. La. 2008) .....................................................................................5

*Cooper v. Fed. Reserve Bank of Richmond,*
   467 U.S. 867 (1984)................................................................................................................4

*Copeland v. ABB, Inc.,*
   521 F.3d 1010 (8th Cir. 2008) ...............................................................................................1

*Corning Glass Works v. Brennan,*
   417 U.S. 188 (1974)................................................................................................................1

*Creed v. Benco Dental Supply Co.,*
   2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .....................................................................14

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)...........................................................................17

*Cuttic v. Crozer-Chester Med. Ctr.*,
  868 F. Supp. 2d 464 (E.D. Pa. 2012) ....................................................................1

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................................5

*Fein v. Ditech Fin.*,
  LLC, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017)...........................................13

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................13

*Garett v. Morgan Stanley DW Inc.*,
  Civ. A. No. 04–1858 (S.D.Cal. Sept. 12, 2006) ................................................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)....................................................................................15

*Greenwald v. Phillips Home Furnishings Inc.*,
  2009 WL 259744 (E.D. Mo., Feb. 3, 2009)...........................................................5

*Hall v. Best Buy Co.*,
  274 F.R.D. 154 (E.D. Pa. 2011)...........................................................................13

*Huyett v. Murlin*,
  2018 WL 3155795 (M.D. Pa. June 28, 2018).........................................................6

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  2011 WL 5547159 (N.D. Ia. Nov. 9, 2011).........................................................18

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
  No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) .................................14

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. September 16, 2011)...............................................17

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
  2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) .........................................................5

*Keller v. TD Bank, N.A.*,
  No. CIV.A. 12-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) .......................15

*In re King Resources Co. Securities Litig.*,
  420 F. Supp. 610 (D. Colo. 1976).........................................................................11

*Lawson, et al. v. Love's Travel Stops & Country Stores, Inc.*,
    2021 WL 720359 (M.D. Pa. Feb. 24, 2021) ...........................................................14

*Lovett v. Connect America.com*,
    2015 WL 5334261 (E.D. Pa. Sept. 14, 2015) ........................................................13

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ..........................................................1, 6, 9, 10

*Meijer, Inc. v. 3M*,
    2006 WL 2382718 (E.D.Pa. Aug. 14, 2006) ........................................................17

*In re Milos Litigation*,
    2011 WL 6015705 (S.D.N.Y. 2011).......................................................................17

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .......................................................................11, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).....................................................................10, 15, 16

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006).....................................................................12

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
    2005 WL 1213926 (E.D. Pa. May 19, 2005).....................................................16, 17

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011).....................................................................................13

*In re Tricor Direct Purchaser Antit. Litig.*,
    No. 05–340 (D.Del. Apr. 23, 2009) .......................................................................17

*Weaver v. Edward D. Jones & Co., LP*,
    Civ. A. No. 08–529 (N.D. Ohio Jan. 5, 2009) .......................................................14

*Wiles v. Southwestern Bell Tel. Co.*,
    2011 WL 2416291 (W.D. Mo. June 9, 2011) ........................................................17

*Williams v. Aramark Sports, LLC*,
    2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) .........................................................17

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910).................................................................................................10

**Statutes**

Fair Labor Standards Act Section 16(b), 29 U.S.C. § 216(b)................................. *passim*

29 U.S.C. § 255 ..................................................................................................................8

Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. ................................................... *passim*

 **Other Authorities**

Fed. R. Civ. P. Rule 23 .....................................................................................................4, 5

Fed. R. Civ. P. Rule 30(b)(6) ................................................................................................1

## Introduction

Named Plaintiff, Nancy De Block ("Named Plaintiff"), respectfully moves for approval of the opt-in settlement reached in this putative collective action pursuant to the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, *et seq.*[1]  ).  Defendant Speedway LLC ("Defendant") does not oppose this motion.

Named Plaintiff moves for approval of the settlement reached in this putative collective action for all those who opt in.  In this action, Named Plaintiff claimed that Defendant paid female General Managers ("GMs") less than their similarly situated male counterparts, in violation of the EPA.  Defendant denied the allegations. The Court should grant this Motion to approve the settlement because it is a fair and reasonable resolution of a *bona fide* dispute.  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *In re Chickie's & Pete's Wage & Hour Litig.,* 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (citing *Lynn's Food Stores, Inc.*).  A copy of the Parties' Settlement Agreement is attached hereto as Exhibit A.  This outcome is a model of efficient resolution, achieved early in the case by experienced counsel for both sides, with minimal burden on the Court.

## Settlement Terms

After exchange and analysis of payroll data relating to both male and female GMs, the exchange of additional written discovery, the Named Plaintiff's deposition, Defendant's Rule

---

[1] The Equal Pay Act is an amendment to the Fair Labor Standards Act that provides for the "the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974); *see also* 29 U.S.C. § 206(d). The Equal Pay Act's prohibition on gender-based wage discrimination is enforced through the FLSA's collective action mechanism.  *See* 29 U.S.C. § 206(d)(3); 29 U.S.C. § 216(b).

1

30(b)(6) deposition of its corporate representatives, and arm's length negotiations, the Parties reached a settlement in an amount not to exceed $12,375,000.00 (the "Maximum Settlement Amount") for the Collective, as follows:

- Participating Settlement Collective Members will be paid an amount based upon a formula determined by Plaintiffs' counsel and subject to Defendant's approval (the "Net Settlement Amount"); and

- Plaintiff's reasonable fees and costs awarded by the Court shall be deducted from the Maximum Settlement Amount, as shall be the cost of the Third-Party Administrator ("TPA") and any incentive payment to the Named Plaintiff;

- Plaintiffs will recover their attorneys' fees equal to 33.33% of the $12,375,000 Maximum Settlement Amount ($4,125,000) inclusive of costs of $22,089.15; and

- In addition to compensating Collective Members, the Settlement provides for a modest $10,000.00 service award to Named Plaintiff Nancy De Block, who was instrumental in pursuing this case, and diligently worked with Plaintiffs' counsel to investigate the case and further the litigation, all for the benefit of those employees who will recover under this Agreement.

The Parties executed the Collective Action Settlement and Release (the "Agreement") that allows eligible members to participate in a settlement of the Equal Pay Act claims asserted in this action. The Collective for purposes of settlement includes "all female GMs that Defendant employed from November 1, 2018, through the date on which settlement notice is provided." There are approximately 4,000 individuals, including the Named Plaintiff, covered by the settlement.

Each Participating Settlement Collective Member shall be paid a pro-rata portion of the Net Settlement Amount based upon a formula for distributing settlement proceeds agreed upon by the Parties, less all applicable withholdings and previously authorized deductions. The Parties acknowledge that not all female Speedway GMs would have colorable claims to prosecute in court. Yet the Parties agree that all Settlement Class members shall be offered a share of the settlement proceeds in exchange for their release of claims. Accordingly, those Settlement Class members who would not have colorable claims shall be offered and, if claimed, shall be paid a predetermined nominal share of the proceeds as stated in the aforementioned Settlement Agreement attached hereto as Exhibit A.

**<u>Facts and Procedural History</u>**

Defendant is a Delaware limited liability company with its principal place of business in Findlay, Ohio. Defendant operates the second largest chain of company-owned and operated retail gasoline and convenience stores in the United States, with approximately 3,900 convenience stores in 36 states throughout the Midwest, East Coast and Southeast, including Pennsylvania. Named Plaintiff was employed as a GM for Defendant.

On February 12, 2020, Named Plaintiff filed a collective action Complaint against Defendant on behalf of herself and others similarly situated alleging that Defendant violated the EPA by paying female GMs less than their similarly situated male counterparts.[2] (Doc. 1). Defendant filed an Answer to the Complaint on April 17, 2020. (Doc. 6). On October 15, 2021, Named Plaintiff's Motion for Conditional Certification of Collective was granted by Order of this Honorable Court. (Doc. 55). Subsequent to the Conditional Certification of the Collective, and

---

[2] Named Plaintiffs, Susan Ludwig and Sheila Carrasquillo were dismissed without prejudice by Order of Court dated June 2, 2021. (Doc. 41).

prior to notice being sent to putative members of the Collective, the Parties jointly motioned to stay the litigation for the purpose of exploring an amicable resolution, which was granted. (Docs. 57 - 60). As a result of the mediation conducted by Hunter R. Hughes, III, Esquire on December 27, 2021, the Parties have reached an agreement to settle this matter, for which the Parties now seek Court approval.

Since the filing of Plaintiff's Complaint, Plaintiff embarked on an investigation and exchange of information. The Parties exchanged discovery requests and responded to requests for production, interrogatories and exchanged critical data regarding the claims and defenses in the case. Plaintiff consulted with their respective clients with regard to the information that was received. The Defendants served payroll data for the putative collective containing tens of thousands of rows of data as well as payroll data for all male GM comparators. Plaintiff evaluated the payroll data for both male and female GMs, and the defenses raised by Defendant in response to Plaintiff's claims. Plaintiff's counsel worked with their statistical expert to evaluate both sets of data and to correlate the different variables unique to this case. The Parties then engaged in robust settlement negotiations, as both sides zealously advocated their interests. As a result of their discussions, and the mediation conducted on December 27, 2021, the Parties were able to reach a settlement that represents a fair value for the claims at issue in this Action.

## Argument

### I.    The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval

This lawsuit was settled on an opt-in basis under the FLSA. As a result, the Agreement has no binding effect on absent members of the Collective, only those that affirmatively accept the benefits of the Agreement by opting in (unlike Rule 23 settlements, which are binding on absent members unless they affirmatively opt *out* of the class). *Compare, e.g., Cooper v. Fed. Reserve*

*Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at \*4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . .  A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

"The primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted).  "Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Altenbach v. Lube Ctr., Inc*., No. 08 Civ. 2178, 2013 WL 74251, at \*2 (M.D. Pa. Jan. 4, 2013) (approving FLSA settlement, noting that "due process concerns are not implicated due to the opt-in nature of the settlement."). Accordingly, the standard for approval of an FLSA settlement is not as rigid as a class action under Rule 23. *Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at \*3 (W.D. Pa. Oct. 22, 2019); *Austin v. Pennsylvania Dep't of Corr*., 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

Although the Third Circuit has not specifically addressed the factors that the district court should consider when approving FLSA settlements, district courts throughout the Third Circuit follow the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir.1982); *Acevedo v. BrightView Landscapes, LLC*, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (collecting cases). The application of the *Lynn's Food* standard for approval is a two-part inquiry: (1) does the settlement resolve a bona fide dispute; and (2) is the settlement fair and reasonable. *Id*. As a third factor, the court also considers whether the settlement "furthers or frustrates the implementation of the FLSA." *Id*. (citations omitted); *see also Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (citation omitted); *Huyett v. Murlin*, 2018 WL 3155795, at *1 (M.D. Pa. June 28, 2018) (setting forth standards for approval of FLSA settlements).

## II.    The Putative Opt-In Class Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. Those eligible to opt into the settlement are "all female GMs that Defendant employed from November 1, 2018, through the date on which settlement notice is provided." Because the employees held the same position during the same time period, the Court may readily conclude – as it did conditionally on

6

October 15, 2021, (Doc. 54) that the employees are "similarly situated" for purposes of effectuating this Settlement.[3]

### III.    This Settlement Resolves a Bona Fide Dispute

The proposed Settlement is the byproduct of contested litigation.  In her Complaint, Named Plaintiff presented detailed allegations regarding Defendant's policy and practice of paying female GMs less than their similarly situated male counterparts.  In its Answer, Defendant denied Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Named Plaintiff's and any putative collective claims in whole or in part.  Through cooperative exchange of pay data and other relevant job-related information, the Plaintiff extensively investigated her pay disparity claims, including those of the collective, as well as Plaintiffs' claim that the action should be conditionally certified as a collective and that notice should issue.  In addition to their factual investigation, Plaintiff also analyzed the various legal issues implicated in this case, including the standards for assessing a single establishment under the EPA and how to handle the defense of claims for liquidated damages under the EPA.  The settlement of this lawsuit was achieved only after the exchange of key information on disputed fact issues and the vetting of the Plaintiffs and Defendants claims and defenses through arms-length negotiation.

Plaintiff alleges Defendant violated the EPA because it compensated female GMs less than their similarly situated male counterparts.  Defendant denies Plaintiff's allegations, contends that its policies and practices comply with all applicable laws, and asserts numerous affirmative and other defenses.  If Plaintiff's allegations ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict exceeding the amount of the Agreement, including

---

[3] Defendant has expressly reserved all defenses that it would assert if the matter proceeds should the Court not approve the Parties' Settlement Agreement.

additional damages for willfulness and statutory liquidated damages, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case through trial. If Defendant prevailed, then the Collective would obtain no recovery of any kind. The Parties' positions were staked out in the Parties' pleadings and throughout settlement discussions, and the Court should readily conclude a *bona fide* dispute between the parties existed.

## IV.    The Proposed Settlement Is Fair and Reasonable

The proposed settlement represents a fair and reasonable compromise of Plaintiffs' claims. The Parties have several *bona fide* disputes over the issues in this litigation, including, but not limited to: (i) whether Speedway's pay and employment decisions, policies, practices, and/or procedures are in violation of the Equal Pay Act and if any such violations are willful; (ii) whether an award of back pay to Plaintiffs and the members of the EPA Collective should be paid by Defendant; (iii) whether an award of liquidated damages should be paid by Defendant to Plaintiffs and the members of the EPA Collective; (iv) whether an award of litigation costs and expenses should be paid by Defendant to Plaintiffs and the members of the EPA Collective, including, but not limited to, reasonable attorneys' fees; (v) whether to award Plaintiff and the members of the EPA Collective pre-judgment and post-judgment interest on any award granted; (vi) the applicable statute of limitations, pursuant to 29 U.S.C. § 255; (vii) whether Speedway's operations nationwide constitute a single establishment; (viii) the amount and method of calculation for any pay differential; and (ix) the amount of damages, if any. With these issues in mind, the Parties engaged in discovery focused on the necessary exchange of information concerning the strengths and weaknesses of Plaintiff's claims and the Defendant's defenses. Armed with that information, the Plaintiff engaged in a mediation facilitated by Hunter Hughes, an experienced mediator in employment law and collective action litigation. In light of the considerable risk, cost, and

uncertainty of continued litigation, Plaintiff submits that the Parties' Settlement Agreement should be approved by the Court as being fair and reasonable.

Importantly, the settlement amount and formula used by Plaintiff's counsel to calculate the Plaintiff, Opt-ins and putative collective member's damages was based on information exchanged during discovery and the settlement amount reflects a data-driven compromise of the disputed factual issues in the case. The central dispute in this case was Plaintiff's claim that Defendant maintained a common policy and practice of paying female GMs less than similarly situated male colleagues on the basis of their gender, even though they performed similar duties requiring the same skill, effort, and responsibility as male GMs. Defendant denies any liability. Thus, Plaintiff would have had to prove, that any pay disparity that existed was not the byproduct of a lawful pay determination, meaning a pay decision unrelated to Plaintiff's gender. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness). Recognizing the uncertainties and risks inherent in litigation, Plaintiff and Defendant ultimately reached a compromise that pays Plaintiff, the Opt-ins and putative collective $12,375,000.00 for their EPA claims.

Based on the pay data provided to Plaintiff by Defendant, this amount represents a roughly $3,102.00 settlement payment for each settlement participant, before the reduction of fees and costs. Plaintiffs and their counsel have considered the certainty provided by a Court-approved settlement as well as the risks of continued litigation associated with Plaintiffs' claims, including but not limited to: the potential risks of the Court grating Defendant's anticipated dispositive motions, which would likely argue, among other things, that Defendant's stores nationwide do not constitute a single establishment; the potential risk that the Court could grant the Defendant's

anticipated motion for decertification; the high burden of proving that Defendant's violations were willful; and the potential risk that the Court or a jury find that Plaintiff has not proven damages for all of the putative collective.  To achieve this settlement for the putative class at this stage was hugely beneficial considering the timing, the risks and hurdles that Plaintiffs would have faced with continued litigations, Plaintiffs and their counsel submit that the secured settlement represents a fair and reasonable resolution.

## V.    Public Policy Favors Settlements

Public policy favors settlements.  This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation.  *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); "Compromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998).  The Parties' early settlement is a model of adversarial positions coupled with cooperative exchange of critical information early in the action which enabled the Parties and their counsel to evaluate the claims and defenses without protracted expense and burden on the Court.  For example, immediately after conditional certification in this matter, Defendant produced pay data for the entire collective, the evaluation of which allowed both parties to engage in productive settlement discussions.

## VI.    Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief

Plaintiffs disagree with Defendant about the merits of Plaintiffs' claims and the viability of Defendant's defenses.  If litigation continues, Plaintiff, and the Collective would face many obstacles, including (i) challenges to proving damages; (ii) risk of decertification; and (iii) the

inherent risks of a jury trial.  The proposed Agreement brings immediate monetary value to each member of the Collective who elects to participate.  Although the recovery at trial could have been greater than sums received under the Agreement, it is also possible the recovery would have been less, or nothing at all.

Defendant raised significant defenses.  Defendant argued that there is no statistically significant differential between the salaries of female and male GMs, and that the payroll records would not support the EPA claims.  Defendant also argued that even if female GMs were paid less than their male counterparts in certain instances, those disparities were the result of legal factors as opposed to gender discrimination.  If Defendant prevailed on these defenses, both Plaintiff and the Collective would likely be barred from any recovery.

Moreover, Plaintiff would have to defend against efforts of Defendant to seek decertification of the Collective, to present collective claims to a jury.  Although Defendant does not dispute the potential members of the Collective are similarly situated for settlement purposes only, following merits discovery, Defendant could have argued that various differences in job duties and responsibilities dictate that the Court decertify the Collective.  Absent settlement, these issues remained uncertain.

In the face of these material disputes, it is significant that this Agreement brings the Collective meaningful monetary value now, not years from now, and provides certainty regarding the outcome.  *In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future.").  "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."  *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

## VII.    This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial with multiple motions both dispositive and related to various claims and defenses.  Named Plaintiff and the Collective would need to compile and adduce documentary evidence, representative testimony, and expert testimony sufficient to establish liability and damages for the entire Collective, a significant component of which would be an assessment of the pay earned by Plaintiff and the Collective's male comparators.  Regardless of the outcome at trial, post-judgment appeals would be likely.  Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

## VIII.   The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, Plaintiff gained a comprehensive knowledge of the claims and defenses at issue.  Plaintiffs had ample evidence to make an informed assessment of the merits of the proposed Agreement.  "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA and EPA actions, Plaintiff's counsel believes the Agreement is fair, reasonable, and adequate.  The Parties respectfully suggest this Court should conclude the proposed Agreement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Agreement.

## IX.    The Named Plaintiff Should Receive a Service Award

The time and dedication that an individual devotes to a lawsuit that inures to the common

benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006). Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011); *Fein v. Ditech Fin.*, LLC, 2017 WL 4284116, at *11 (E.D. Pa. Sept. 27, 2017) ("Courts routinely pay an incentive award to class representatives or named plaintiffs in wage and hour class/collective actions to reward their service to the entire [collective].") (citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)).

In examining the reasonableness of a requested service award, courts consider: (1) "the financial, reputational and personal risks to the plaintiff"; (2) "the degree to which the plaintiff was involved in discovery and other litigation responsibilities"; (3) "the length of the litigation"; and (4) "the degree to which the named plaintiff benefitted (or not) as a [collective] member." *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011). These considerations weigh in favor of the requested Service Award.

In addition, Plaintiff De Block took substantial actions to protect the interests of potential collective action members that resulted in a substantial benefit that took over two years of litigation to secure. Plaintiff De Block participated in an extensive investigation, provided documents crucial to establishing the claims of the collective, extensively reviewed the claims presented, helped Plaintiffs' Counsel identify materials to seek during discovery, aided in preparation for mediation, responded to discovery requests, and prepared for and attended her deposition. Courts

in this Circuit have approved service awards for similar activities and in actions litigated for far less time than this one. *See, e.g.*, *Lovett v. Connect America.com*, 2015 WL 5334261, at \*4 (E.D. Pa. Sept. 14, 2015) (approving incentive payments for plaintiffs who had located documents and witnesses, participated in settlement negotiations, and provided documents and information in anticipation of responding to written discovery). Courts routinely approve service awards equal to or greater than the awards requested here. *See, e.g.*, *Lawson, et al. v. Love's Travel Stops & Country Stores, Inc*., 2021 WL 720359, at \*2, \*4 (M.D. Pa. Feb. 24, 2021) (approving a \$10,000.00 service award); *Creed v. Benco Dental Supply Co*., 2013 WL 5276109, at \*1, \*7 (M.D. Pa. Sept. 17, 2013) (approving award of \$15,000 to named plaintiff in FLSA collective action settlement).

Plaintiff Nancy De Block substantially assisted counsel in achieving this Settlement on behalf of the collective and should receive a service award. Plaintiff Nancy De Block was responsible for initiating this action and provided invaluable guidance and assistance on numerous occasions to Plaintiff's counsel. Plaintiff Nancy De Block assisted Plaintiff's counsel in analyzing the facts of the case and evaluating the proffered defenses. There is no question that the other employees have substantially benefited from the actions of Ms. De Block. Without Ms. De Block's efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of a \$10,000.00 service award to Ms. De Block is amply justified. *See In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at \*12 (E.D. Pa. July 16, 2009), approving a \$20,000 service award to each of the three named Plaintiffs, and further citing, "*Garett v. Morgan Stanley DW Inc.*, Civ. A. No. 04–1858 (S.D.Cal. Sept. 12, 2006) (order granting final approval) (awarding named plaintiffs enhancement awards of \$20,000 each); *Weaver v. Edward D. Jones & Co., LP*, Civ. A. No. 08–529 (N.D. Ohio Jan. 5, 2009) (order granting final approval) (approving stipulation that included enhancement awards of

14

$15,000 each to named plaintiffs); *see also Godshall*, 2004 WL 2745890, at *6 (awarding $20,000 to each of two named plaintiffs in employment class action involving $1,125,000 settlement fund)."

In exchange for receiving a service award, Plaintiff Nancy De Block will provide Defendant with a general release of all claims.

## X.    Plaintiffs' Counsel Should be Awarded Their Fees and Expenses.

The Third Circuit uses two methods in determining attorneys' fees in class or collective action lawsuits, the lodestar method and the percentage-of-recovery method. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820–21 (3d Cir. 1995). The percentage of recovery method is the prevailing methodology used by courts in the Third Circuit for wage and hour cases. *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). Further, the percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund "in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).

Plaintiff's Counsel took this case on a contingency-fee basis. Accordingly, Plaintiff's Counsel undertook this litigation with the very real risk of obtaining nothing if no recovery was obtained for Plaintiffs or the Collective. Moreover, Plaintiff's Counsel's contingency arrangement required them to invest both time and expenses with no guaranty of recoupment.

This case required Plaintiff's Counsel to expend significant time, labor and monies in pursuing these claims and the amount of fees sought is reasonable. Specifically, Plaintiffs' Counsel has litigated the claims in this case for over two years and has collectively invested over 1,562.45 hours working on this case with no assurance of any recovery at all. Gershbaum Decl. at

15

6. These hours include time spent investigating the facts of this case; interviewing GMs regarding their pay, work experiences and their knowledge concerning the existence of a pay differential; gathering, drafting and responding to written discovery requests; gathering Plaintiff's discovery; preparing for and taking multiple 30(b)(6) depositions of Defendant's corporate witnesses, preparing for and defending the depositions of Plaintiff, briefing Plaintiff's successful motion for conditional certification; preparing status reports; appearing for all court conferences; analyzing voluminous pay and time records; retaining an expert, reviewing and creating multiple damages models and performing damage calculations in preparation for mediation; mediating this action; negotiating a settlement favorable to Plaintiff and the Collective; devising a settlement allocation formula to ensure an equitable distribution of funds; and working with Defendant's counsel to prepare the Settlement Agreement and related submissions currently before this Court for approval.  Gershbaum Decl. at 6.

This District and other courts within this Circuit apply a "lodestar cross-check" to determine whether fees sought are reasonable.  As of the filing of this application, Plaintiff's Counsel's collective lodestar is $1,210,397.50 at their standard hourly rate.[4]  The fees sought by Plaintiffs' Counsel are reasonable, courts in this circuit routinely approve multipliers above and beyond the lodestar as reasonable fee awards in class cases. The Third Circuit has routinely upheld multipliers of between one and four. *See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* 2005 WL 1213926, at *16 (E.D. Pa. May 19, 2005) (Third Circuit routinely recognizes "multipliers ranging from one to four" in common fund cases); *In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 742 (3d Cir. 2001)(same); *In re Prudential,* 148 F.3d at 341 (same).

---

[4]     Plaintiff's Counsel's standard hourly rates have been consistently approved by courts throughout the country.  Gershbaum Decl. at 6.

16

In this matter using a loadstar check results in a 3.4 multiplier of Plaintiffs Counsel's fee, which is within a range generally accepted by the Third Circuit.

The agreed recovery in the amount of $4,125,000, inclusive of monies expended in the prosecution of this action by counsel in the amount of $22,356.32, equaling 33 1/3% of the total Settlement is eminently reasonable.[5]  *See Arrington v. Optimum Healthcare IT, LLC.*, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018)(granting a loadstar multiplier of 5.3, and finding that "class counsel undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation."); *see* also *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742; *Stop & Shop Supermarket Co.*, 2005 WL 1213926, at *16 (same); *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 150 (2000) (same); *Meijer, Inc. v. 3M,* 2006 WL 2382718 at *24 (E.D.Pa. Aug. 14, 2006) (approving a percentage fee award that translated to a 4.77 multiplier); *In re Tricor Direct Purchaser Antit. Litig.,* No. 05–340 at 9 (D.Del. Apr. 23, 2009) (approving a one-third fee where lodestar multiplier was 3.93); *Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4-5 (W.D. Mo. June 9, 2011) (awarding 33 1/3% of the common fund in attorneys' fees); *Johnson v. Brennan*, 2011 WL 4357376 at *13 (S.D.N.Y. September 16, 2011) (awarding 33 1/3 % of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation,* 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Williams v. Aramark Sports, LLC,* 2011 WL 4018205 at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases."); and *Boone v. City of Philadelphia*, 668 F. Supp. 693, 714 (E.D. Pa. 2009) (citing a

---

[5]    Plaintiff's Counsel, even though not obligated by the terms of the Settlement Agreement will be will not be seeing separate reimbursement for the $22,623.69 costs incurred in this action out of the settlement fund.

study of 289 class action settlements in the Third Circuit indicating that the average percentage awarded was 31 1/7% and the median was 33 1/3%).

Plaintiffs' counsel should not be penalized for achieving this expeditious, and impressive, benefit for the Collective. A fee reduction at this juncture would only incentivize unnecessary litigation and use of the Court's resources. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159 at *1-3 (N.D. Ia. Nov. 9, 2011) (*sua sponte* increasing attorney fee from 33.33 % to 36.04 % in recognition of efficient early settlement).

Plaintiff's counsel fee, which Defendant does not contest, and will be paid without diminishing the fairness of the recovery for the Collective. Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb the Parties' settlement of the amount of Plaintiffs' counsel fees. Defendant does not oppose this request for attorneys' fees and costs.

## Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in a thorough investigation of the facts and law and reached an Agreement that eliminates the respective risks and expense of continued litigation. The Agreement is fair, reasonable, and provides members of the Collective a significant Settlement Fund which provides compensation for the period of time they were employed as GMs. For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement; (2) approving the requested Service Award; (3) approving Plaintiffs' requested attorneys' fees and costs; (4) approving the proposed Notice and Consent to Join forms; and (4) dismissing the case in its entirety with prejudice as to all Plaintiffs and Opt-In Plaintiffs.

Date: New York, New York
     May 31, 2022          By:    *s/ Rebecca Predovan*
                                      Rebecca S. Predovan
                                      Marc S. Hepworth
                                      Charles Gershbaum
                                      David A. Roth
                                      HEPWORTH GERSHBAUM & ROTH, PLLC
                                      192 Lexington Avenue, Suite 802
                                      New York, NY 10016
                                      Telephone: (212) 545-1199
                                      Facsimile: (212) 532-3801
                                      www.hgrlawyers.com

                                      Derrek William Cummings
                                      Larry A. Weisberg
                                      WEISBERG CUMMINGS P.C.
                                      2704 Commerce Dr., Suite B
                                      Harrisburg, PA 17110
                                      (717) 238-5707

                                      Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date applied by the Court's ECF filing system, I electronically filed the foregoing with the Clerk of Court using CM/ECF.

By:  *s/ Rebecca Predovan*
       Rebecca S. Predovan