COLLECTIVE ACTION SETTLEMENT AND RELEASE

This Collective Action Settlement and Release is entered into by and between Plaintiff Nancy De Block ("De Block," or "Named Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), and Defendant Speedway LLC ("Defendant" or "Speedway"), and is approved by their respective counsel of record, subject to the terms and conditions hereof and the Court's approval.

**A.      Definitions**

1.      The Definitions as set forth in this Section A are material terms of this Agreement.

2.      The "Act" or the "Equal Pay Act" refers to the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

3.      "Action" or "Lawsuit" means and refers to *Nancy De Block v. Speedway LLC,* Civil Action No. 2:20-CV-00824-GAM (E.D. Pa.).

4.      "Agreement" or "Settlement Agreement" means and refers to this Collective Action Settlement and Release, including any attached Exhibits hereto.

5.      "Approval" or "Approval Order" means the Court's order granting in all material respects the Unopposed Motion to Approve Collective Action Settlement, approving this Agreement on the terms provided herein (or as the same may be modified by subsequent mutual written agreement of the Parties), and directing entry of a judgment dismissing the Action in its entirety with prejudice, including the claims of all Settlement Participants who, by submitting a Claim Form, become part of the conditionally certified Section 216(b) collective in the Lawsuit.

6.      "Approval Date" means the date on which the Clerk enters on the Court's docket the Court's order granting Approval, as defined herein, to the Approval Motion.

7.      "Approval Motion" means the Unopposed Motion to Approve Collective Action Settlement.  The Approval Motion will be filed on or before May 31, 2022, or on such later date as mutually agreed by the Parties and approved by the Court. Plaintiffs' Counsel will draft the Approval Motion and will provide Speedway's Counsel with an opportunity to review and comment upon it before it is filed.  The Approval Motion will, in addition to seeking the Court's approval of this Settlement and Settlement Agreement, ask the Court to approve the Settlement Notice as defined herein.

8.      "Claim Form" means and refers to that part of the Notice, as defined herein and attached hereto as Exhibit A (subject to Court approval), by which members of the Settlement Collective will communicate to the Settlement Administrator their intent to (a) participate in and be bound by the terms of this Settlement Agreement and (b) opt-in to the Action as a party plaintiff. The Claim Form shall include the formula for calculating each Settlement Participant's Individual Settlement Amount, as set forth in Paragraph 58(c) of this Agreement, but shall not state the Settlement Participant's specific allocation as calculated based on the Net Settlement Amount. Along with the Notice and Claim Form an addressed and stamped envelope will be provided.  The

Claim Form shall include an attestation that any member of the Settlement Collective who signs the Claim Form and returns it to the Settlement Administrator by the Notice Response Deadline: (a) thus becomes a Settlement Participant; (b) shall be treated for all legal purposes as though she had filed an opt-in or consent to join form with the Court pursuant to 29 U.S.C. § 216(b); (c) waives any argument of the invalidity, ineffectiveness, or unlawfulness of the Claim Form as the mechanism by which she became a party plaintiff in the Action and a Settlement Participant under this Agreement; (d) waives any argument that she did not opt in to pursuant to 29 U.S.C. § 216(b) or that she is not bound by the terms of this Agreement; and (e) releases all of the Released Claims against the Released Parties as set forth in the Notice and in this Agreement.  In the Notice attached hereto as Exhibit A for the Court's approval, the Claim Form as defined herein is referred to as the "Consent to Join Form."

9.      "Collective Counsel" or "Plaintiffs' Counsel" refers to Larry A. Weisberg and Derrek W. Cummings of the law firm Weisberg Cummings, P.C., and Marc S. Hepworth, Charles Gershbaum, David A. Roth, and Rebecca S. Predovan of the law firm of Hepworth, Gershbaum & Roth, PLLC.

10.      "Collective Data" means a complete list of all members of the Settlement Collective that Defendant will diligently and in good faith compile from its records and provide to the Settlement Administrator within twenty-one (21) calendar days after the Effective Date.  The Collective Data consists of each Settlement Collective member's full name, last known phone number (to the extent in Speedway's possession), social security number, last known mailing address, last known personal email address (to the extent in Speedway's possession), and any tax information needed for the Settlement Administrator to effectuate the tax reporting requirements of this Agreement, such as the last state in which a member of the Settlement Collective worked. The Collective Data shall not be provided to Plaintiffs' Counsel, however, the name(s) and all contact information for all members of the Settlement Collective who return a Claim Form by the applicable Notice Response Deadline, or reaches out to Plaintiffs' Counsel or the Settlement Administrator to consult concerning the case and/or Settlement, will be provided to Plaintiffs' Counsel at seven (7) day intervals during the period allotted under this Agreement for Settlement Collective members to return their Claim Forms.

11.      "Collective Period" is the period during which members of the Settlement Collective were employed as Speedway General Managers ("GM") and is deemed to be the period from November 1, 2018 through the Notice Date.

12.      "Complaint" refers to the Complaint alleging individual and Section 216(b) collective action claims under the Equal Pay Act filed in the Court on February 12, 2020.

13.      "Court" refers to the U.S. District Court for the Eastern District of Pennsylvania. "Judge" refers to U.S. District Judge Gerald Austin McHugh.

14.      "Defendant" means and refers to Speedway LLC.

15.      "Defendant's Counsel" or "Defense Counsel" means and refers to Brian M. Lands of Shook, Hardy & Bacon LLP, and Brett C. Bartlett of Seyfarth Shaw LLP.

16.      "Total Settlement Amount" means the total of: (a) attorneys' fees as approved by the Court; (b) reasonable costs and expenses as approved by the Court; (c) Settlement Administration Costs and expenses of the Settlement Administrator, as approved by the Court; (d) the amount of any Service Award approved by the Court; and (e) the sum of Individual Settlement

Amounts to be paid to the Settlement Participants pursuant to this Agreement, as calculated pursuant to the formula set forth in Paragraph 58(c) of this Agreement.

17.     "Effective Date" means the first business day following the latest of the following dates:  (i) the date the Court enters its Approval Order; (ii) the date the Court (or Clerk of Court) enters judgment dismissing this Action with prejudice; (iii) the date of the Court's order on Plaintiffs' Counsel's petition for an award of attorneys' fees and costs; (iv) the date of the Court's order approving Settlement Administration Costs; and (v) the date of the Court's order approving any Service Payments.

18.     "EPA" or "Equal Pay Act" refers to the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

19.     "FLSA" refers to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.,* including the amendments to the FLSA known as the Equal Pay Act, as defined herein.

20.     "General Release" or "General Release of Claims" includes all of the Released Claims as defined in Paragraphs 32-35 (inclusive) and Paragraphs 60-63 (inclusive) and, in addition, those claims defined in Paragraph 65 of this Agreement.

21.     "Individual Settlement Amount" shall have the meaning given to it in Paragraph 58(c) below.

22.     "Maximum Settlement Amount" shall have the meaning given to it in Paragraph 58(a) below.

23.      "Named Plaintiff" or "Plaintiff" means and refers to Nancy De Block ("De Block").

24.     "Net Settlement Amount" shall have the meaning ascribed to it in Paragraph 58(b) below.

25.     "Notice" or "Settlement Notice" means the Notice of Collective Action Settlement in the form attached hereto as Exhibit A (subject to Court approval) that the Settlement Administrator will distribute to members of the Settlement Collective on the Notice Date.  The Notice shall include a Claim Form as defined herein.  Subject to Court approval, the Notice shall include Plaintiffs' Counsel's contact information.  The Notice shall state the nature of Plaintiffs' claims as alleged in the Complaint, and shall also contain express language that Defendant does not admit liability, does not believe that its compensation of General Managers violates any federal, state, or local law, and contends that it did not pay any female General Manager less than a male General Manager for unlawful reasons.  The Notice shall describe the Released Claims, as defined herein, that Settlement Participants shall release against the Released Parties.

26.     "Notice Date" is the date on which the Settlement Administrator shall distribute the Settlement Notice via United States Mail and email to all members of the Settlement Collective, which distribution shall occur on a single date, the extent possible, within ninety (90) days after the Effective Date.   The Settlement Administrator shall notify Plaintiffs' Counsel (rpredovan@hgrlawyers.com  and  cgershbaum@hgrlawyers.com)  and  Defendant's Counsel (bbartlett@seyfarth.com; blands@shb.com) by email on the Notice Date that Notice was distributed.

27.     "Notice List" means the list of members of the Settlement Collective who will receive Notice from the Settlement Administrator based on the Collective Data that Defendant shall provide to the Settlement Administrator.  The Notice List shall not be provided to Plaintiffs'

Counsel, however, the name(s) and all contact information for all members of the Settlement Collective who return a Claim Form by the applicable Notice Response Deadline, or reaches out to Plaintiffs' Counsel or the Settlement Administrator to consult concerning the case and/or Settlement, will be provided to Plaintiffs' Counsel at seven (7) day intervals during the period allotted under this Agreement for Settlement Collective members to return their Claim Forms. However, if pending deadlines or client needs require, such information can be provided earlier at Plaintiffs Counsel's request.

28.     "Notice Response Deadline" is the date sixty (60) calendar days after the Notice Date.  Any Claim Form returned to the Settlement Administrator via United States Mail shall be deemed to be in compliance with the Notice Response Deadline if it is postmarked on or before the date sixty (60) calendar days after the Notice Date**.**  For purposes of any returned Notice that is re-mailed pursuant to Paragraph 72 of this Agreement, the Notice Response Deadline shall be sixty (60) calendar days after the re-mailing of the Notice.

29.     "Opt-In Date" shall mean: (a) with respect to any existing opt-in Plaintiff in the Lawsuit, the date on which such person filed an opt-in or consent to join form with the Court; (b) with respect to any putative member of the Settlement Collective who timely returns a Claim Form and becomes a Settlement Participant, the date that the Section 216(b) collective in the Lawsuit was conditionally certified (i.e., October 15, 2021); and (c) with respect to Named Plaintiff Nancy DeBlock, the date the Complaint in the Lawsuit was filed (February 12, 2020)**.**  The Settlement Administrator shall maintain a log reflecting the date on which each Settlement Participant's Claim Form is received and shall provide a reporting of the status of that log to Plaintiffs' Counsel or Defendant's Counsel (but not any other person or entity) upon written request**.**  Such report shall consist only of the number of Claim Forms received as of the date of any such request.

30.     "Parties" or "Settling Parties" means Named Plaintiff, the Settlement Collective, Settlement Participants, and Defendant, collectively.  "Party," singularly, may refer to Named Plaintiff, the Settlement Collective, and the Settlement Participants, collectively; and may refer to Defendant.

31.     "QSF" means the Qualified Settlement Fund established by the Settlement Administrator in compliance with all applicable laws, rules, and regulations for the benefit of the Settlement Collective, into which the Total Settlement Amount shall be paid as set forth in Paragraph 75(b)**,** and from which the Settlement Administrator shall distribute Individual Settlement Amounts and other payments as specified in this Agreement.

32.     "Release" shall mean the release and discharge of the Released Claims by Plaintiff and all of the Settlement Participants, and their respective assignees, with respect to the Released Parties.

33.     "Released Claims" by the Settlement Participants (including specifically, but without limitation, Named Plaintiff) upon Court Approval of the Settlement will include, but are not limited to, all claims for relief, whether known or unknown, suspected or unsuspected, which any Settlement Participant has had or now has against the Released Parties or any of them for the Release Period for any and all claims alleged in the Complaint or the Action, or which could have been alleged in the Complaint or the Action, as well as all claims and legal theories raised during mediation based on the allegations, facts, matters, transactions or occurrences alleged therein, specifically including without limiting the generality thereof claims for alleged wage-related discrimination on any basis and of any nature whatsoever.  The release of the foregoing claims

extends to all theories of relief regardless of whether the claim is, was, or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under state law, federal law, local law, or common law (including, *without limitation,* as violations of the Equal Pay Act; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.;* Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981); and includes all types of relief available for the above referenced claims, including, without limitation, any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

> *For California Settlement Collective members:* Release of Unknown Claims:  You waive all rights under California Civil Code § 1542 which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

Notwithstanding the foregoing, the "Released Claims" shall not include the wage and hour claims of those Speedway General Managers also participating in the settlement of the action styled *DaRosa v. Speedway LLC,* No. 1:19-cv-10791-RGS (D. Mass.), and those General Managers settling wage and hour claims as a result of the decertification of the conditionally certified collective action in *DaRosa.*  The "Released Claims" will also exclude: (a) claims arising after you sign this Agreement; (b) claims for breach of this Agreement; (c) claims that cannot be waived, such as for unemployment benefits or worker's compensation benefits; (d) *subject to and without waiver of Paragraph 59 of this Agreement,* any right to COBRA benefits or vested retirement benefits; and (e) any existing rights of defense and indemnity or liability insurance coverage benefits. Nothing in any part of this Agreement limits the right of a Settlement Participant to: (i) file a charge with any administrative agency, such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency, or communicate directly with or provide information (including testimony) to an agency, or otherwise participate in an investigation or agency proceeding; (ii) provide information in an administrative, legislative, or judicial proceeding relating to alleged criminal conduct or discrimination, pursuant to a written request from an administrative agency or legislature, or in court pursuant to subpoena or court order; or (iii) communicate with law enforcement or your attorney. You nonetheless give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings. However, you may receive money properly awarded by the U.S. Securities and Exchange Commission (SEC) as a reward for providing information to that agency.

For those Settlement Participants receiving a Service Award, Released Claims shall also include a General Release of Claims as defined in Paragraph 65.

34.     "Released Parties" means Defendant and each of its past and present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, its company-sponsored employee benefit plans, and its successors and predecessors, subsidiaries, affiliates, parents, and attorneys, both individually and in their official capacities, as well as all persons acting by, though, under, or in concert with any of these persons or entities.

35.     "Release Period" shall be the time period governing the Released Claims which shall begin three years prior to each Settlement Participant's respective Opt-In Date as defined in

Paragraph 29 above and continue through and including the Approval Date. *Provided, however,* that the Release Period for any General Manager who releases claims under a state or local analogue to the Equal Pay Act (or any other state or local law, ordinance, statute, or common law theory banning discrimination in pay or compensation on any basis) shall be based on each Settlement Participant's respective Opt-In Date and shall begin the number of years before that date equivalent to the applicable state or local law, ordinance, statute, or common law theory's statute of limitations continuing through and including the Approval Date.

36.    "Service Payment" or "Service Award" means the amount approved by the Court to be paid to the following person, if she submits a timely Claim Form, in addition to her Individual Settlement Amount as a Settlement Participant, in exchange for her execution of a General Release of Claims as described in Paragraph 65 of this Agreement:  Nancy De Block.

37.    "Settlement" shall refer to this Agreement of the Parties to settle the Released Claims as set forth and embodied in this Agreement.

38.    "Settlement Administrator" means and refers to the third-party class action settlement administrator, mutually acceptable to the Parties, who will provide the Notice to the Settlement Collective and distribute the Individual Settlement Amounts and other payments as described in this Settlement Agreement.  Rust Consulting, Inc. has been selected as the mutually acceptable Settlement Administrator.

39.    "Settlement Administration Costs" means (without limiting and subject to Paragraph 58(g) of this Agreement) the costs payable from the Total Settlement Amount to the Settlement Administrator for administering this Settlement, including, but not limited to, calculating Individual Settlement Amounts for members of the Settlement Collective based on the Net Settlement Amount, printing, distributing, and tracking documents for this Settlement, tax reporting, distributing the Individual Settlement Amounts and other payments specified in this Agreement, and providing necessary reports and declarations, as requested by the Parties.  The Settlement Administration Costs include, if necessary, any such costs in excess of the amount represented by the Settlement Administrator as being the maximum costs necessary to administer the Settlement.

40.    "Settlement Collective" means all persons to whom a Settlement Notice will be sent pursuant to the terms of this Agreement.  The Settlement Collective includes all female persons whom Defendant employed as a General Manager during the Collective Period, including Plaintiff and all persons whom she purports to represent in this Action but excluding all persons who have previously settled claims otherwise covered under this Agreement.  The Settlement Collective shall also include any other female Speedway General Manager who receives a Settlement Notice and submits a Claim Form by the Notice Response Deadline.

41.    "Settlement Participant" means, individually, any member of the Settlement Collective who (a) returns a Claim Form (as defined herein) to the Settlement Administrator by the Notice Response Deadline; or (b) files an opt-in or consent to join form with the Court by the Notice Response Deadline. "Settlement Participants" means, collectively, all Settlement Participants as defined herein.

42.     "Weeks Worked" or "Work Weeks" for each Settlement Participant means any week in which the Settlement Participant worked for Defendant as a General Manager during the

applicable limitations period as defined in Paragraphs 29 and 58(c). A partial Work Week shall be counted as a full Work Week.

**B.**   **Background**

43.   De Block is a former employee of Speedway who, according to the Complaint allegations, worked as a General Manager at Speedway in New Jersey from approximately 2014 until July 2017.

44.   Plaintiff (along with two other named plaintiffs later dismissed from the Action) filed a Complaint in this Court on February 12, 2020 alleging that they were paid less than male counterparts for the same work allegedly in violation of the Equal Pay Act. Plaintiff's Complaint alleged individual Equal Pay Act claims and sought to represent a collective of similarly situated individuals pursuant to the opt-in provisions of Section 216(b) of the FLSA. De Block filed a signed "Consent to Become a Party Plaintiff" form together with the Complaint, and five other individuals filed notices of consent to join the action on May 6, 2020 (the "Opt-In Plaintiffs").

45.   Defendant answered on April 17, 2020, denying all material allegations and denying that Speedway female General Managers are similarly situated such that collective treatment under 29 U.S.C. § 216(b) is appropriate.

46.   The Parties conducted thorough investigations into the facts of the Action, including holding depositions of Named Plaintiff De Block and Defendant's representatives, exchanging and responding to written discovery, including document production, and engaging in motion practice.

47.   On October 15, 2021, over Speedway's opposition, the Court granted Plaintiff's motion for conditional certification of a nationwide collective of female Speedway General Managers under the Equal Pay Act pursuant to 29 U.S.C. § 216(b). Notice was not issued to the certified collective.

48.   On December 27, 2021, Plaintiffs and Defendant participated in mediation virtually via Zoom before Hunter R. Hughes, Esq., a highly experienced class and collective action mediator. Prior to the mediation, Defendant produced to Plaintiffs comprehensive pay and employment data for the putative collective, sufficient to permit the Parties – supported by experts, economists, and statisticians – to engage in robust, good faith mediation under the guidance of mediator Hughes. After a full-day mediation, the Parties continued settlement negotiations for the following two months, and on March 2, 2022, reached agreement on and fully executed a Confidential Settlement Term Sheet, the substance of which is reflected in this Settlement Agreement.

49.   The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties, supervised by Hunter R. Hughes, Esq., an experienced wage-and-hour class and collective action mediator. This Agreement represents a compromise and settlement of highly disputed claims. This Agreement, made and entered into by and between the Named Plaintiff (on behalf of herself, the Settlement Collective, and the Settlement Participants) and Defendant, each with the assistance of their respective counsel and attorneys of record, is intended to fully, finally, and forever settle, compromise and discharge the Released Claims against the Released Parties, subject to the terms and conditions set forth herein.

50.     Plaintiffs' Counsel are knowledgeable about and have done extensive research with respect to the applicable law, the claims brought and that could have been brought in the Complaint by members of the Settlement Collective, and the potential defenses to those claims.  Plaintiffs' Counsel have diligently pursued an investigation of the Settlement Collective's claims against Defendant.  Based on records and data received and on their own independent investigation and evaluation, Plaintiffs' Counsel is of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Settlement Participants in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant, potential decertification of the conditionally certified collective in this Action, and potential appellate issues.

## C.     Denials and Reservations of Rights

51.     The Parties enter into this Agreement to resolve the dispute that has arisen between them and to avoid the burden, expense, and risk of continued litigation.  In entering into this Agreement, Defendant does not admit, and specifically denies, any and all claims and allegations asserted by, and any and all liability to, Plaintiff, the Settlement Collective, and any Settlement Participant in this Action, as to any and all causes of action that were asserted or that might have been asserted in this Action.  Without limiting the foregoing, Defendant expressly denies that it engaged in any discrimination or wrongdoing of any kind associated with its compensation practices for Plaintiff, the members of the Settlement Collective, or the Settlement Participants. Defendant maintains that it has complied at all times with the Equal Pay Act, the FLSA, Title VII, and any other federal, state, or local law by compensating Plaintiff and all members of the Settlement Collective without regard to sex.  Nonetheless, Defendant wishes to settle and compromise the claims asserted in the Action to avoid further substantial expense and the inconvenience and distraction of protracted and burdensome litigation.  Defendant has also taken into account the uncertainty and risks inherent in litigation, and without conceding any infirmity in the defenses that it has asserted or could assert against Plaintiff, the Settlement Collective, or the Settlement Participants, has determined that it is desirable and beneficial that Plaintiff's claims and the claims of all Settlement Participants be settled in the manner and upon the terms and conditions set forth in this Agreement.

52.     For settlement purposes only, Defendant will stipulate that the Settlement Participants described herein may be deemed to constitute a collective subject to certification under 29 U.S.C. § 216(b). This stipulation to treatment of a collective consisting of certain female General Managers for settlement purposes only is in no way an admission that final certification of any Section 216(b) collective in this Action (or any other action) is proper and shall not be admissible in this or in any other action except for the sole purposes of enforcing this Agreement. If, however, the Effective Date does not occur for any reason, Defendant's stipulation to a collective for settlement purposes only as defined by and part of the Settlement and Settlement Agreement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not final certification of any Section 216(b) collective would be appropriate in a non-settlement context in this Action or any other legal action or proceeding.  Defendant expressly reserves its rights and declares that it would continue to oppose certification and seek decertification of any Section 216(b) collective in the Action or any other legal proceeding, and would likewise continue to oppose the substantive merits of the claims asserted in the Action if the Effective Date does not occur for any reason.  Named Plaintiff

expressly reserves her rights and declares that she will continue to contend that Section 216(b) certification is appropriate in the Action and to pursue a judgment on the merits of the claims asserted in the Action if the Effective Date does not occur for any reason.

53.     The Parties agree that neither the Parties' Settlement, this Settlement Agreement, nor the acts to be performed or judgments to be entered pursuant to the terms of the Settlement and Settlement Agreement, shall be construed as an admission by Defendant of any wrongdoing or violation of any statute or law or liability on the claims or allegations in the Action.  Neither this Agreement's acceptance by the Parties nor its filing with the Court shall, in themselves, render this Agreement admissible in evidence in any other proceeding, subject to the limited exception that it shall be admissible in an action or proceeding to approve, interpret, or enforce this Agreement.

**D.      Conditions Precedent to Settlement**

54.     The Settlement as a whole is expressly contingent upon the Court's entry of an Approval Order dismissing the Action in its entirety with prejudice, and the entry of such Approval Order (including dismissal with prejudice) on the Court's docket is a condition precedent to any commitment, obligation, or promise that Defendant has made in this Agreement including without limitation payment of Individual Settlement Amounts or attorneys' fees.

**E.      Motion for Approval**

55.     As set forth in Paragraph 7 of this Agreement, Plaintiffs' Counsel will prepare the Approval Motion.  The Approval Motion will be filed on or before May 31, 2022, or on such later date as mutually agreed by the Parties and approved by the Court.  Plaintiffs' Counsel will provide Speedway's Counsel with an opportunity to review and comment upon the Approval Motion before it is filed.  The Approval Motion will ask the Court to: (a) approve  this Settlement and Settlement Agreement, including Exhibit A hereto (Notice/Claim Form); (b) approve the agreed payment to the Settlement Administrator; (c) enter an order awarding attorneys' fees and costs to Collective Counsel; (d) approve any Service Award requested by Plaintiffs' counsel; and (e) enter judgment approving the Settlement and dismissing the Action with prejudice, thereby permanently barring all Settlement Participants from prosecuting any Released Claims against any of the Released Parties.

56.     In the event that a dispute arises between the Parties before the Approval Motion is filed as to any term of the Settlement or the Settlement Agreement, the Parties agree and stipulate that they shall submit such dispute to Hunter R. Hughes, Esq., who will serve as an arbitrator for the purpose of resolving the dispute.

57.     In the event that the Court does not approve some or all of the provisions of this Settlement Agreement, the Parties agree and stipulate that Speedway's Counsel and Collective Counsel will negotiate in good faith to remedy the issue(s) that the Court identifies as offending. Should they be unable to remedy such issues after good faith negotiation, the Parties further agree and stipulate that they shall submit such dispute to Hunter R. Hughes, Esq., to assist and mediate in doing so.

**F.      Financial Terms of Settlement**

58.     The financial terms of the Settlement are as follows:

(a) <u>Maximum Settlement Amount</u>:   Subject to Court approval and the conditions specified in this Agreement, and in consideration of the mutual covenants and promises set forth herein, the Parties agree to settle this Action for a maximum of Twelve Million, Three Hundred and Seventy-Five Thousand Dollars and Zero Cents ($12,375,000.00) ("Maximum Settlement Amount").  The Maximum Settlement Amount is the maximum that will be paid by Defendant (excluding the employer's share of payroll taxes and withholdings), and includes Individual Settlement Amounts, approved attorneys' fees of Collective Counsel, approved costs and expenses of Collective Counsel, a Service Payment to Nancy De Block, Settlement Administration Costs, and any and all other amounts approved by the Court in this Action.  The Maximum Settlement Amount does not include Defendant's share of payroll taxes and withholding on the portion of the Individual Settlement Amounts that is allocated to wages, which Defendant will be required to separately pay.

(b) <u>Net Settlement Amount</u>:  The "Net Settlement Amount" is defined as the Maximum Settlement Amount less attorneys' fees and litigation costs as approved and awarded by the Court, a Service Payment to Nancy De Block as awarded by the Court, Settlement Administration Costs, and any and all other amounts approved by the Court as costs in this Action. The Net Settlement Amount is the amount from which Individual Settlement Amounts for each member of the Settlement Collective, including but not limited to Settlement Participants, will be calculated.  In the event that the Court reduces the attorneys' fees, costs, expenses, or Service Awards, the difference shall be placed in the Net Settlement Amount.

(c) <u>Individual Settlement Amounts for Settlement Participants</u>:  The Individual Settlement Amount for each member of the Settlement Collective will be calculated by the Settlement Administrator after the Court's rulings on the Approval Motion (including approval of attorneys' fees and costs, Settlement Administration Costs, and Service Payments), and *before* Notice is issued, as follows:

> Regardless of the number of Work Weeks worked by a Settlement Participant, each Settlement Participant who timely returns a Claim Form will receive a base payment of at least One Hundred Dollars ($100.00) ("Base Payment") in exchange for the Release of claims as defined and set forth in Paragraphs 32-35 (inclusive) and Paragraphs 60-63 (inclusive) of this Agreement. Said $100.00 will be deducted from the Net Settlement Amount regardless of the number of Work Weeks worked by the Settlement Participant(s) receiving a Base Payment.  Each Settlement Collective member's portion of the settlement shall be calculated by their proportional share of the total number of weeks worked by the Settlement Collective, multiplied by the Net Settlement amount.

Defendant shall not be responsible for errors made by Plaintiffs' Counsel or the Settlement Administrator relative to determination of the Individual Settlement Amounts allocable to each member of the Settlement Collective or each Settlement Participant.

The Settlement Administrator shall distribute each Settlement Participant's Individual Settlement Amount.

Notwithstanding the foregoing, the Parties stipulate and agree that, if any female General Manager employed between November 1, 2018 and the Notice Date does not receive a Settlement Notice but contacts the Settlement Administrator or Plaintiffs' Counsel on or before

the Notice Response Deadline seeking to participate in the Settlement, any such persons will be included as members of the Settlement Collective and the Settlement Administrator will recalculate Individual Settlement Amounts using the formula set forth in this Paragraph 58(c) prior to distribution of Settlement Participants' respective Individual Settlement Amounts. The Settlement Administrator shall promptly provide any such persons with a Notice and Claim Form (keeping a record of the mailing date of same), and any such persons shall be eligible to participate in the Settlement only upon executing and returning a Claim Form to the Settlement Administrator within thirty (30) calendar days of the mailing of same.

       (d)     <u>Allocation of Individual Settlement Amounts</u>: The Individual Settlement Amounts, including Base Payments, will be allocated based on the allegations in the Action as follows: one-half (50%) will be paid as wages subject to all applicable withholdings, including withholding of all applicable local, state, and federal taxes; and one-half (50%) will be paid as liquidated and other non-wage items from which no taxes will be withheld. The Settlement Administrator will issue to each Settlement Participant an Internal Revenue Service Form W-2 and comparable state forms with respect to the wage allocation and a Form 1099 with respect to the non-wage items allocation. Defendants will provide all needed W-4 or W-9 data maintained in its records, and no such data will be required from Settlement Participants.

       (e)     <u>Service Payment to Named Plaintiff</u>: Plaintiffs' Counsel will apply to the Court for approval of a Service Payment in an amount not to exceed Ten Thousand Dollars ($10,000.00) to be paid to Nancy De Block. Defendant agrees not to oppose this request. The amount, if any, awarded to Nancy De Block as a Service Payment will be set by the Court in its discretion, not to exceed $10,000.00. The Service Payment to Nancy De Block is included in, and shall be paid out from, the Net Settlement Amount. One-half (50%) of any Service Award will be paid as wages subject to all applicable withholdings, including withholding of all applicable local, state, and federal taxes; and one-half (50%) of any Service Award will be paid as liquidated and other non-wage items from which no taxes will be withheld. The Settlement Administrator will issue to Nancy De Block an Internal Revenue Service Form W-2 and comparable state forms with respect to the wage allocation and a Form 1099 with respect to the non-wage items allocation of any Court-approved Service Payment. Nancy De Block shall be solely and legally responsible for paying any and all applicable taxes on the Service Payment.

       The Parties agree that any amount awarded as a Service Payment less than the requested amount shall not be a basis for Plaintiffs' Counsel or for any Settlement Participant receiving a Service Payment to void the Settlement. Should the Court approve a lesser amount for the Service Payments, the difference shall be added to the Net Settlement Amount for calculation of Individual Settlement Amounts allocable to those members of the Settlement Collective who return a timely Claim Form.

       (f)     <u>Attorneys' Fees and Costs</u>: Defendant agrees not to oppose a request by Plaintiffs' Counsel to the Court for an award of attorneys' fees of up to one-third (defined as 33.33%) of the Maximum Settlement Amount, plus Settlement Administration Costs in the amount of $41,500.00, as well as reasonable litigation costs and expenses not to exceed $22,623.69. Attorneys' fees and costs are included in the Maximum Settlement Amount, and shall be paid out from the Total Settlement Amount. The ultimate amount of any attorneys' fees and costs awarded to Plaintiffs' Counsel is to be determined by the Court, and Defendant is not agreeing to pay any specific amount other than the amount awarded by the Court. Should the Court approve a lesser amount than what is sought by Plaintiffs' Counsel, the difference shall be added to the Net

Settlement Amount on the basis of which potential Individual Settlement Amounts for each member of the Settlement Collective (including those amounts payable to Settlement Participants who return a timely Claim Form) will be calculated.  Any Court order awarding less than the amount sought by Plaintiffs' Counsel shall not be grounds to rescind the Settlement Agreement or otherwise void the Settlement.  While Plaintiffs' Counsel retains the right to appeal any such reductions, resolution of any such appeal will not, notwithstanding any other term or provision of this Agreement, delay Defendant's obligation to make payments other than Attorneys Fees' as set forth in this Agreement.  All claims for attorneys' fees and costs that Plaintiffs' Counsel, Plaintiff, and the Settlement Participants may possess against Defendant have been compromised and resolved in this Settlement and shall not be affected by any appeal that Plaintiffs' Counsel may file.  The Settlement Administrator shall issue to Plaintiffs' Counsel an IRS Form 1099 reflecting the amount of attorneys' fees and costs awarded by the Court, and will also issue an IRS Form 1099 to each Settlement Participant reflecting her proportionate share of attorneys' fees and costs awarded by the Court.  Without limiting any other term of this Agreement, if any taxing body determines that tax treatment or reporting of the payment of attorneys' fees or litigation costs and expenses was incorrect, Plaintiff and Plaintiffs' Counsel acknowledge and assume all responsibility for paying any additional amounts owed and agree to indemnify and hold Defendant harmless for payment of any related taxes, interest, penalties, fees, and costs as to each of those payments.

The Parties agree that, over and above the total amount of any attorneys' fees and costs awarded to Plaintiffs' Counsel pursuant to this Paragraph 58(f), each Party shall bear their own fees and costs incurred by them or arising out of the Action, the negotiation, execution, and/or implementation of this Settlement, and/or the process of obtaining, administrating, or challenging an Approval Order.  The Parties will not seek reimbursement of any such fees and/or costs from any party to this Agreement or any of the Released Parties.

(g)     <u>Settlement Administration Costs</u>:   The fees and other charges of the Settlement Administrator will not exceed $41,500.00 based on the all-in proposal provided by the Settlement Administrator.  Settlement Administration Costs, including any that exceed the all-in proposal, are included in the Maximum Settlement Amount and shall be paid out from the Total Settlement Amount.   *Provided, however,* that notwithstanding any other provision of this Agreement, any Settlement Administration Cost claimed by the Settlement Administrator after the Individual Settlement Amounts have been calculated based on the Net Settlement Amount shall be borne by Plaintiffs' Counsel, unless the reason for the increased Settlement Administration Costs are errors or insufficiencies in the Collective Data provided by Defendant, in that event the additional Settlement Administration Costs will be deemed to be included within the Total Settlement Amount and shall be paid out from the Total Settlement Amount.  Any unapproved amount of Settlement Administration Costs shall be allocated to the Net Settlement Amount on the basis of which Individual Settlement Amounts shall be calculated.  Any Court order awarding Settlement Administration Costs less than the amount requested by Plaintiffs shall not be grounds for Plaintiffs, Plaintiffs' Counsel, or any Settlement Participant to rescind the Settlement Agreement or otherwise void the Settlement.

(h)     <u>Responsibility for Employer's Share of Payroll Taxes</u>: As to that portion of the Settlement Participants' settlement proceeds that constitutes wages, Defendant will be separately responsible for only its share of any employer payroll taxes, including the employer FICA and FUTA contributions, which shall not be paid from the Maximum Settlement Amount.

Within twenty-one (21) calendar days after the latest Notice Response Deadline, the Settlement Administrator shall provide Defendant with a calculation of the employer's share of payroll taxes for all members of the Settlement Collective who timely return a Claim Form. Pursuant to and at the time specified in Paragraph 75(b) of this Agreement, Defendant will provide that amount to the Settlement Administrator. The Settlement Administrator shall remit the employer payroll taxes due to the appropriate taxing authorities.

     (j) <u>Tax Liability</u>: Plaintiffs' Counsel, Defendant, and Defendant's Counsel make no representation as to the tax treatment or legal effect of payments called for hereunder, and Plaintiffs, the Settlement Collective, and the Settlement Participants are not relying on any statement or representation by Plaintiffs' Counsel, Defendant, or Defendant's Counsel in this regard.  Plaintiffs and the Settlement Participants understand and agree that they will be solely responsible for the payment of any taxes and penalties assessed on their respective payments described herein.  Income tax withholding will also be made pursuant to applicable state and/or local withholding codes or regulations.  IRS Forms W-2 and/or Forms 1099 will be distributed by the Settlement Administrator at times and in the manner required by the Internal Revenue Code of 1986 (the "Code") and consistent with this Agreement.  If the Code, the regulations promulgated thereunder, or other applicable tax law is changed after the date of this Agreement, the processes set forth herein may be modified in a manner to bring Defendant into compliance with any such changes.

   59. <u>No Determination of Eligibility for Employee Benefits</u>.  Defendant will not use the Individual Settlement Amounts for determination of eligibility for, or calculation or recalculation of, any employee benefits (*e.g.,* vacations, holiday pay, retirement plans, etc.) of the Settlement Participants, and Defendant will not modify the Settlement Participants' previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare plan sponsored by Defendant, unless otherwise required by law.  Rather, it is the Parties' intention that this Agreement will not affect any rights, contributions, or amounts to which any Settlement Participant may be entitled under any benefit plans.

## G. <u>Release by the Settlement Participants</u>

   60. Upon entry of the Approval Order, and except as to such rights or claims as may be created by this Settlement Agreement, Plaintiff and each Settlement Participant will forever completely release and discharge the Released Parties from the Released Claims for the Release Period.

   61. Each Settlement Participant, by returning a timely Claim Form, will be deemed to have made the foregoing Release as if by manually signing it.  The Notice will advise all Collective Members (including eventual Settlement Participants) of the binding nature of the foregoing Release and such Notice shall have the same force and effect as if this Agreement were executed by each Settlement Participant.

   62. The Parties intend that the Settlement described in this Agreement will Release and preclude any further claim, whether by lawsuit, administrative claim or action, arbitration, demand, or other action of any kind, by each and all of the Settlement Participants to obtain a recovery based on, arising out of, and/or related to any and all of the Released Claims. The Settlement Collective (including eventual Settlement Participants) shall be so notified in the Notice.  This Settlement shall constitute, and may be pleaded as, a complete and total defense to any such

Released Claims if raised in the future.  This Paragraph 62 does not apply to any Settlement Collective member who does not return a Claim Form pursuant to this Agreement.

63.     The Named Plaintiff, on behalf of herself, the Settlement Participants, and the Settlement Collective, acknowledges and agrees that the claims for unpaid wages in the Action are disputed, and that the payments set forth herein constitute payment of all sums allegedly due to her and them.

64.     If the Court materially narrows the scope of the Release as set forth in Paragraphs 32-35 (inclusive) and Paragraphs 60-63 (inclusive) (or the General Release of Claims set forth in Paragraph 65 to be executed by Named Plaintiff in exchange for a Service Payment), the Parties stipulate and agree that they will negotiate in good faith to remedy any issue(s) that the Court identifies as offending.  Should they be unable to remedy such issues after good faith negotiation, the Parties further agree and stipulate that they shall submit such dispute to Hunter R. Hughes, Esq., to assist and mediate in doing so.

## H.    **General Release by the Named Plaintiff**

65.     In exchange for monetary consideration in the form of a Service Award as set forth herein, the Named Plaintiff does hereby, for herself and for her spouses, heirs, successors, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and assigns, forever and completely waive, release**,** and discharge Speedway and the Released Parties from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever that she may have against any or all of the Released Parties arising out of her employment with Speedway and/or any other fact, condition, circumstance, or occurrence whatsoever, relating back to the full extent of the applicable statutes of limitations giving rise to any such claim up to and including the date of the Approval Order, as defined herein, whether known or unknown, suspected, or concealed, and whether presently asserted or otherwise (the "General Release").

This General Release includes, *without limitation*, all of the Released Claims defined in Paragraph 33 of this Agreement.  As part of this General Release, Named Plaintiff fully and completely waives, releases, and forever discharges the Released Parties from all other claims relating back to the full extent of the applicable statutes of limitations giving rise to any such claim through the date the Approval Order, as defined herein, including, but not limited to, all claims that the Released Parties:

   a.     Violated public policy, common law, or statutory law (including, but not limited to, claims for breach of contract; unjust enrichment; unpaid wages; intentional or tortious interference with contract or business relations; fraud; misrepresentation; conversion; promissory estoppel; detrimental reliance; wrongful termination; retaliatory discharge; assault; battery; personal injury; defamation; libel; slander; negligence; negligent hiring, retention, or supervision; invasion of privacy; conspiracy; intentional or negligent infliction of emotional distress and/or mental anguish; or loss of consortium).

b.   Violated Speedway's personnel policies, procedures, or handbooks, any covenant of good faith and fair dealing, or any purported contract of employment, express or implied, between the Parties.

c.   Failed to provide Named Plaintiff with any benefits pursuant to the terms of any employee benefit plan maintained, administered, sponsored, funded, and/or paid, in whole or in part, by Speedway, violated the terms of any such benefit plan, breached any fiduciary obligation with respect to such plan, or discriminated against Named Plaintiff for the purpose of preventing her from obtaining benefits pursuant to the terms of any such plan, or in any way violated any provision of the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").

d.   Violated the FLSA or any other comparable federal, state or local law, ordinance, statute, or regulation, or common law theory for unpaid wages of any kind (e.g., base salary, regular wages, overtime pay, premium pay, commissions, bonuses, mileage reimbursement, uniform deductions, tips, etc.), as well as all related claims for any other compensation, benefits, penalties, interest, liquidated damages, damage enhancements, attorneys' fees, costs, or expenses (*provided, however,* that this subparagraph does not apply to any Settlement Participant also participating in the settlement of claims arising out of the *DaRosa* action, as set forth in Paragraph 33 of this Agreement);

e.   Retaliated or discriminated against Named Plaintiff on the basis of race, color, national origin, ancestry, religion, whistleblower activity, age, sex, disability, handicap, sexual orientation, leave status, marital status, parental status, veteran status, source of income, genetic status, or any other basis in violation of any city, local, state, or federal law, statute, ordinance, executive order, regulation, or constitution, or otherwise violated any such authority, including, *but not limited to,* the Age Discrimination in Employment Act      of 1967, as amended, 29 U.S.C. § 621 *et seq.*; the Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the FLSA; the Equal Pay Act, 29 U.S.C. § 206(d); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.;* the Genetic Information Nondiscrimination Act of 2008 (GINA); the Rehabilitation Act;  the National Labor Relations Act; and the Worker Adjustment and Retraining Notification Act.

For the purpose of implementing a full and complete release of claims, Named Plaintiff, expressly acknowledges that the Release (set forth in Paragraphs 32-35 (inclusive) and Paragraphs 60-63 (inclusive), herein) and General Release (set forth in this Paragraph 65) are intended to include in their effect, without limitation, claims that she did not know or suspect to exist at the time of execution hereof, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of this matter, and that

the consideration given under this Agreement is also for the release of those claims and contemplates the extinguishment of any such unknown claims.

The General Release excludes: claims arising after Named Plaintiff signs this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment benefits or worker's compensation benefits. Nothing in any part of this Agreement limits the Named Plaintiff's right to: (i) file a charge with any administrative agency, such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency, or communicate directly with or provide information (including testimony) to an agency, or otherwise participate in an agency proceeding; (ii) provide information in a administrative, legislative, or judicial proceeding relating to alleged criminal conduct or alleged discrimination, pursuant to a request from an administrative agency or legislature, or in court pursuant to subpoena or court order; or (iii) communicate with law enforcement or your attorney. You nonetheless give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings. However, you may receive money properly awarded by the U.S. Securities and Exchange Commission (SEC) as a reward for providing information to that agency.

## I.   <u>Interim Stay of Proceedings</u>

66.     The Parties agree to a stay of all proceedings in the Action while the Parties carry out the Settlement, except such as are necessary to effectuate the Settlement.  The Parties stipulate and agree that they will work cooperatively together to submit any motions, reports, or other documents to the Court as may be necessary to effectuate such a stay.

## J.   <u>Settlement Administration</u>

67.     <u>Appointment of Settlement Administrator</u>.  The Parties have agreed to the appointment of a Settlement Administrator to perform the duties of a settlement administrator, including calculating Individual Settlement Amounts (prior to distribution of Notice), mailing and emailing the Notice (using standard devices to obtain forwarding addresses), independently reviewing and verifying documentation associated with any Claim Forms received by the Settlement Administrator, resolving any disputes regarding the calculation or application of the formula for determining the Individual Settlement Amounts, drafting and mailing the settlement checks to Settlement Participants, issuing IRS W-2 and 1099 Tax Forms, and performing all such other tasks as set forth herein or as the Parties mutually agree or that the Court orders.  The Settlement Administrator shall also be responsible for calculating, withholding from the Individual Settlement Amounts, and remitting to applicable government agencies sufficient amounts, if any, as may be owed by Settlement Participants for applicable employee taxes, as well as for issuing any other tax forms as may be required by law for all amounts paid pursuant to this Agreement. The Settlement Administrator shall also be responsible for setting up all necessary tax accounts, preparing and sending all notices, and forwarding all payroll taxes, notices, and penalties to the appropriate government authorities.

68.     <u>Disputes Regarding Settlement Administration</u>.  Any and all disputes relating to administration of the Settlement by the Settlement Administrator (except for disputes regarding Collective Data or the Notice List) shall be referred to the Court, if necessary, which will have continuing jurisdiction over enforcement of the terms and conditions of this Settlement Agreement, until Plaintiff and Defendant notify the Court that all payments and obligations contemplated by this Settlement Agreement have been fully carried out.  Notwithstanding the foregoing, prior to

presenting any issue to the Court for resolution, counsel for the Parties will confer in good faith to resolve the dispute without the necessity of Court intervention and shall submit the dispute to mediator Hunter R. Hughes, Esq., who will attempt to resolve the dispute between the Parties.

69.    Provision of Collective Data to Settlement Administrator.  Within twenty-one (21) calendar days after the Effective Date, Defendant shall provide the Collective Data, as defined herein, to the Settlement Administrator, which shall constitute the list of persons to whom the Settlement Administrator shall provide Notice pursuant to this Agreement, i.e., the Notice List. The Collective Data/Notice List provided to the Settlement Administrator will remain confidential and will not be used or disclosed to anyone else, including Plaintiffs' Counsel, except as detailed in Paragraphs 10, 27, and 70 herein, and except as required by applicable tax authorities, pursuant to Defendant's express written consent, or by order of the Court.   The Settlement Administrator shall represent and warrant that it will: (a) provide reasonable and appropriate administrative, physical, and technical safeguards for any personally identifiable information ("PII") which it receives from Defendant, and (b) promptly provide Defendant with notice if PII is subject to unauthorized access, use, disclosure, modification, or destruction.

70.    Calculation of Individual Settlement Amounts.  Within fourteen (14) calendar days after receiving the Collective Data/Notice List from Defendant, the Settlement Administrator shall calculate the Individual Settlement Amount for each member of the Settlement Collective pursuant to the formula set forth in Paragraph 58(c) of this Agreement, and the Settlement Administrator shall promptly communicate such calculations (by employee number and without inclusion of contact information) to Speedway's Counsel and Plaintiffs' Counsel.   The Settlement Administrator shall provide Plaintiffs' Counsel with the name(s) and all contact information for all members of the Settlement Collective who return a Claim Form by the applicable Notice Response Deadline or reach out to Plaintiffs' Counsel or the Settlement Administrator, together with each Settlement Collective member's Individual Settlement Amount will be provided to Plaintiffs' Counsel at seven (7) day intervals during the period allotted under this Agreement for Settlement Collective members to return their Claim Forms.  However, if pending deadlines or client needs require, such information can be provided earlier at Plaintiffs Counsel's request.

71.    Notice.  The Notice (including the Claim Form), as approved by the Court, shall be sent by the Settlement Administrator to the Settlement Collective members on the Notice Date (as defined herein), by first class mail and email (if available), no earlier than seven (7) calendar days after the date the Settlement Administrator communicates its calculation of Individual Settlement Amounts to Speedway's Counsel and Plaintiffs' Counsel pursuant to Paragraph 70, and no later than twenty-one (21) calendar days after such date.   The Settlement Administrator will take reasonable steps to ensure that the Notice is sent to all Settlement Collective members, including utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, update mailing address(es).  The Parties stipulate and agree that the Settlement Administrator will not issue any form of follow-up or reminder notice.

72.    Returned Notices.  The Settlement Administrator shall use standard devices, including a skip trace, to obtain forwarding addresses of Settlement Collective members if any envelopes with Notices are returned.  Notices returned before the Notice Response Deadline will be re-mailed to any Settlement Collective member for whom an updated address is located within ten (10) calendar days of the latter of the dates on which the Settlement Administrator learns of the failed mailing and the date on which it receives an updated address.  The Notice shall be

identical to the original Notice, except that it shall notify the Settlement Collective member that the Claim Form must be returned sixty (60) calendar days after the re-mailing of the Notice. The Settlement Administrator shall notify Defendant's Counsel and Plaintiffs' Counsel by email on the date the last re-mailing occurs for purposes of calculating the latest Notice Response Deadline.

73.     Presumption Regarding Receipt of Notice.  It will be conclusively presumed that if an envelope has not been returned within thirty (30) calendar days of the mailing that the Settlement Collective member received the Notice.

74.     Disputes Regarding Collective Data.  Pursuant to Paragraphs 8 and 25 of this Agreement, the Notice/Claim Form will inform each Settlement Collective member of the formula based on Work Weeks that will be used to calculate her Individual Settlement Amount, but will not state a dollar amount.  The Parties stipulate and agree that Defendant's records as to Work Weeks for each Settlement Collective member, including Settlement Participants, will be presumed to be determinative.  Defendant has taken good faith, reasonable steps to validate this information and, based on those steps, states that the information is true and correct to the best of its knowledge, information, and belief.  Plaintiffs' Counsel and the Settlement Administrator will rely on the Collective Data provided by Defendant to calculate Individual Settlement Amounts for the Settlement Participants.  *Provided, however,* that if Plaintiffs' Counsel provides to the Settlement Administrator and Speedway's Counsel reliable evidence rebutting such records as to particular members of the Settlement Collective before the Notice Date, Collective Counsel and Defense Counsel agree to meet and confer in good faith about the evidence to determine the Settlement Collective member's actual number of Weeks Worked and estimated Individual Settlement Amount.  If Collective Counsel and Defense Counsel are unable to agree, they agree to submit the dispute to the Settlement Administrator to render a final decision. The Settlement Administrator's determination is final and binding without a right of appeal.

a.  The Settlement herein was based upon data provided by Defendant containing approximately 3,989 female General Managers, who had a specified number of work weeks associated with them, due to the passage of time, the total number of the Settlement Collective may increase.  Defendant represents that there will be no more than 4,000 Settlement Collective members, so that Plaintiff can provide accurate representations to the Court concerning the amount that the Settlement Collective members will receive pursuant to this Agreement.

75.     Calculation of Individual Settlement Amounts for Settlement Participants and Payment Deadlines.

a.  No later than twenty-one (21) days after the last of the Notice Response Deadlines set forth in Paragraphs 28 and 72 of this Agreement, the Settlement Administrator shall calculate the sum of all Individual Settlement Amounts for members of the Settlement Collective who timely returned a Claim Form and thereby became Settlement Participants, and shall promptly notify Defendant's counsel and Plaintiffs' Counsel of that amount.

b.  Twenty-one (21) calendar days after the Settlement Administrator provides Defendant with the Individual Settlement Amounts pursuant to Paragraph 70, before the Notice is issued to the Settlement Collective, Defendant will transmit to the QSF a payment for the attorneys' fees, costs, and Settlement Administrator fees, which the Settlement Administrator will distribute upon receipt.  No later than

twenty-one (21) days after receiving the sum of the Individual Settlement Amounts for Settlement Participants from the Settlement Administrator pursuant to this Paragraph 75(b), Defendant shall make a payment into the QSF equaling the sum of the Individual Settlement Amounts as defined herein. At the same time, or as soon as practically possible after they are calculated and determined, Defendant shall separately pay its share of payroll taxes to the Settlement Administrator in accordance with Paragraph 58(h) of this Agreement. Upon Defendant's transfer of the sum of the Individual Settlement Amounts to the QSF and payment of its employer's share of payroll taxes and withholdings, Defendant, the Released Parties, and Defendant's Counsel shall have no further monetary liability or financial responsibility to Collective Counsel, Plaintiff, Settlement Collective members, Settlement Participants, the Settlement Administrator, or any vendors or third parties employed by Plaintiff, Collective Counsel, and/or the Settlement Administrator in connection with this Action. Defendant shall not be obligated to make any payments contemplated by this Agreement unless and until the Effective Date of the Agreement occurs. Any difference between the Maximum Settlement Amount and the Total Settlement Amount, including but not limited to amounts unclaimed by the Settlement Collective, shall revert to Defendant after the Deadline for Cashing Settlement Checks expires.

76. <u>Distribution of Funds</u>. Twenty-one (21) calendar days after the Settlement Administrator provides Defendant with the Individual Settlement Amounts pursuant to Paragraph 70, before the Notice is issued to the Settlement Collective, Defendant will transmit to the QSF a payment for the attorneys' fees, costs and Settlement Administrator fees, which the Settlement Administrator will distribute upon receipt. No later than twenty-one (21) calendar days after the latter of the payment of funds payable to Settlement Participants into the QSF and the Settlement Administrator's receipt of Defendant's share of payroll taxes on the payable Individual Settlement Amounts, the Settlement Administrator will mail the calculated Individual Settlement Amounts and any Service Payment to the Settlement Participants. The Settlement Administrator shall notify Plaintiffs' Counsel (rpredovan@hgrlawyers.com and cgershbaum@hgrlawyers.com) and Defendant's Counsel (bbartlett@seyfarth.com; blands@shb.com) by email on the date that such payments were mailed or made.

77. <u>Deadline for Cashing Settlement Checks</u>. Settlement Participants shall have ninety (90) calendar days after mailing by the Settlement Administrator to cash their settlement checks. If any Settlement Participant's check is not cashed within that period, the check will be void and a stop-payment will be issued, and the Settlement Administrator shall issue or otherwise revert the unclaimed funds to Defendant sixty (60) days after the Deadline for Cashing Settlement Checks expires. The Release will be binding upon all Settlement Participants to whom the consideration of a valuable settlement check has been tendered but who do not cash their checks within the 90-day period. In the event that any settlement check is returned to the Settlement Administrator within ninety (90) days of mailing, the Settlement Administrator will, within seven (7) calendar days of receipt of the returned settlement check, perform a skip trace to locate the individual, and notify Speedway's Counsel and Collective Counsel of the results. If a new address is located by these means, the Settlement Administrator will have ten (10) calendar days to re-issue the check. Neither Defendant, Defendant's Counsel, Collective Counsel, Plaintiff, nor the Settlement Administrator will have any liability for lost or stolen settlement checks, forged signatures on settlement checks, or unauthorized negotiation of settlement checks. Without limiting the

foregoing, in the event a Settlement Participant notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check.  If the check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check. No person shall have any claim against the Settlement Administrator, Defendant, Defendant's Counsel, Collective Counsel, or any other agent designated by Plaintiff or Defendant based upon the distribution of Individual Settlement Payments made substantially in accordance with this Agreement or further orders of the Court.

78.     <u>Confidentiality and Communications</u>. Plaintiff and her Counsel may respond to calls and other communications from Settlement Collective members concerning the Settlement, but may not initiate such communications.  Excluded from this provision is any communication that Plaintiff and her Counsel may have with any individual that opted into the Lawsuit or who timely returns a Claim Form.   Plaintiffs' Counsel may not publicize this Settlement or Settlement Agreement, including its Exhibits, by any means whatsoever, including by responding to any media inquiry, except that Plaintiffs' Counsel (Marc S. Hepworth, Charles Gershbaum, David Roth, Larry A. Weisberg and Derrek W. Cummings) may post a neutral statement on their firms' websites that: (a) does not identify Defendant and does not provide any information that would permit Defendant to be identified; (b) provides only cursory details about the general nature of the case and position at issue; (c) notes that this is a confidential settlement -- i.e., information similar to that posted at the following link:   https://www.hgrlawyers.com/recent-successes.html on the date on which the Parties executed the Term Sheet on which this Settlement Agreement is based.

> *For California Settlement Collective members:*  Nothing in this Agreement waives or limits your right to testify truthfully in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged sexual harassment if you are required or requested to do so pursuant to a valid court order, subpoena, or a written request by a legislature or an administrative agency.  Nothing in this Agreement prevents you from making a truthful disclosure of factual information related to your claims of workplace discrimination in the Lawsuit.

Defendant will not initiate communications with its employees concerning the Parties' Settlement prior to, or during, the period in which the Settlement Collective may submit Claim Forms to become Settlement Participants.  When asked about the Settlement by its employees, Defendant will not discourage participation and will respond that no action will be taken that negatively impacts a Settlement Participant's employment, retaliatory or otherwise, due to their participation in the Settlement.

**K.     <u>Voiding the Agreement</u>**

79.     If the Court fails or refuses to issue the Approval Order or fails to approve any material condition of this Settlement Agreement, except as otherwise specifically noted herein, which effects a fundamental change to the Settlement, and the Parties do not mutually agree to such fundamental change, the entire Settlement Agreement shall be rendered voidable and unenforceable as to all Parties herein at the option of either Party.  Material conditions include, without limitation, any modification to the definitions of or other terms affecting the Maximum Settlement Amount, the Net Settlement Amount, the Total Settlement Amount, the Settlement

Collective, the Collective Period, the Settlement Participants, the Released Claims (including the General Release), the Released Parties, and/or the Covenant Not to Sue.

80.     If for any reason the Effective Date does not occur, the Settlement and this Settlement Agreement shall be null and void and the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be vacated; Plaintiff and Defendant will have no further obligations under the Settlement, including any obligation by Defendant to pay the Maximum Settlement Amount, the Net Settlement Amount, the Total Settlement Amount, the Individual Settlement Amounts, attorneys' fees and litigation costs, or any other amounts that otherwise would have been owed under this Settlement; the Parties will be returned to the status quo prior to entering this Agreement, and the Parties do not waive, and instead expressly reserve, their respective rights to prosecute and defend the Action as if this Agreement never existed.  In such event, the Agreement and all negotiations (including mediation), court orders, and proceedings relating thereto shall be without prejudice to the rights of any and all Parties hereto, and evidence relating to the Agreement and all negotiations related to it shall not be admissible or discoverable in the Action or otherwise.

81.     If for any reason the Effective Date does not occur, any costs incurred by the Settlement Administrator shall be borne equally by Defendant and Plaintiff, unless otherwise expressly specified in this Agreement.

## L.     Covenant Not To Sue

82.     Plaintiff and each Settlement Participant individually covenants not to institute any lawsuit, complaint, proceeding, grievance, or action of any kind at law, in equity, or otherwise in any forum, court, arbitration, or proceeding of any kind against any Released Parties with respect to any Released Claims.  Plaintiff and each Settlement Participant also covenant that she and they will not join, participate in, or consent to opt into any lawsuit or action as a plaintiff, intervener, or other adverse party against the Released Parties pertaining to any of the Released Claims, and that she and they will elect to opt out of any lawsuit or action against any of the Released Parties pertaining to any of the Released Claims, of which she is involuntarily made an adverse member or participant.  If Plaintiff or any Settlement Participant violates this promise by instituting or joining a lawsuit or action (or, upon notice by Speedway, by failing to opt-out of a class lawsuit or action) against any of the Released Parties for the Released Claims, if she continues to participate in a class lawsuit or action, even after notice of her violation, she shall be liable to any and all Released Parties that are party to the lawsuit or action for such Released Parties' reasonable attorneys' fees and other costs for breach of this Agreement, plus any resulting damages that may be proven in a court of law.  Plaintiff or any Settlement Participant shall have thirty (30) days following notification of the violation by Speedway to discontinue her participation in such class lawsuit or action without penalty. If Speedway fails to notify the Settlement Participant of their violation, no penalty will result, *provided* that the Settlement Participant shall nevertheless cease participating (whether through withdrawal or dismissal of claims with prejudice) in a class lawsuit or action in which she becomes aware she is involved. Notification by Speedway pursuant to this paragraph should be made directly to Plaintiffs' Counsel as well as the Settlement Participant.

83.     Nothing in this Agreement prohibits Plaintiff or any Settlement Participant from suing Speedway, or Speedway from suing De Block or any Settlement Participant, to enforce the terms of this Agreement.

84.     Plaintiff and each Settlement Participant acknowledge and agree that the Covenant Not to Sue is an essential and material term of this Agreement without which the Parties could not have reached a settlement.  Plaintiff and each Settlement Participant further acknowledge and agree that a breach of the Covenant Not to Sue is a material breach of the Agreement, and that any of the Released Parties will have the right to sue the breaching party for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorneys' fees and costs related to the breach-of-contract lawsuit.

## M.     Representation Regarding Other Matters

85.     Plaintiff and each Settlement Participant individually represents and warrants to Speedway, as a material inducement to Speedway's entering into this Agreement, that, other than the Action, there are no pending matters, claims, charges, proceedings, complaints, or actions against or with respect to Speedway or any of the Released Parties, filed or submitted by Plaintiff or any Settlement Participant or with her knowledge, or on her behalf, with any federal, state, or local court, department, arbitration tribunal, or administrative or other agency. However, this representation does not apply to any Settlement Participant also participating in the settlement of claims arising out of the *DaRosa* action, as set forth in Paragraph 33 of this Agreement.

## N.     Other Terms

86.     Waiver.  The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

87.     Parties' Authority. The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

88.     Mutual Full Cooperation. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement and Settlement Agreement, including but not limited to, execution of such documents and such other actions as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.

89.     No Prior Assignments. This Settlement Agreement may not be, directly or indirectly, assigned, transferred, or encumbered by any member of the Settlement Collective to any person or entity, including any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Settlement Agreement.

90.     Inadmissibility of Agreement. Whether or not the Court issues the Approval Order, nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties.  Each of the Parties hereto has entered into this Settlement Agreement with the intention of avoiding further disputes and litigation with the attendant inconvenience and expense.  This Settlement Agreement (including its Exhibit A) is a settlement document, and it, along with all related documents such as the Notice/Claim Form and the Approval Motion, shall, pursuant Federal Rule of Evidence 408 and any comparable state law rule of evidence, be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce this Settlement Agreement.

91.     <u>Notices</u>. Unless otherwise specifically provided herein, all notices, demands or other communications given by the Parties to each other hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed:

To Plaintiffs' Counsel and/or the Settlement Participants:

Marc S. Hepworth
Hepworth, Gershbaum and Roth, PLLC
192 Lexington Ave., #802
New York, New York 10016
Tel: (212) 545-1199
mhepworth@hgrlawyers.com

To Defendant:

Brett C. Bartlett
Seyfarth Shaw LLP
1075 Peachtree St., NE
Suite 2500
Atlanta, GA 30309
Tel: (404) 888-1875
bbartlett@seyfarth.com

92.     <u>Construction</u>. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his or its counsel participated in the drafting of this Settlement Agreement.  The Parties hereto expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement and further agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

93.     <u>Captions and Interpretations</u>. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

94.     <u>Modification</u>. This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court**.** *Provided, however,* that notwithstanding the preceding sentence, Defendant's Counsel and Plaintiffs' counsel may confer in good faith and reach agreement to modify, in writing, any deadline after the Agreement's Effective Date pertaining to execution and administration of this Settlement Agreement. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by all of the Parties hereto.

95.     <u>Dispute Resolution</u>.  Prior to instituting legal action to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, a Party shall provide written notice to the other Party and allow thirty (30) calendar days to cure the alleged deficiencies,

and the Parties agree to seek the help of mediator Hunter R. Hughes, Esq., to resolve any dispute that they are unable to resolve informally. During this period, the Parties shall bear their own attorneys' fees and costs. This provision shall not apply to any legal action or other proceeding instituted by any person or entity other than Plaintiffs, the Settlement Participants, or Defendant.

96.     <u>Choice of Law</u>. This Settlement Agreement shall be governed by and construed, enforced and administered in accordance with the laws of the State of Ohio, without regard to its conflicts-of-law rules.

97.     <u>Reservation of Jurisdiction</u>.  After entry of final judgment dismissing the Action with prejudice, the Court approving the settlement will have continuing jurisdiction solely for purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement and Settlement Agreement, (ii) settlement administration matters, and (iii) such post-judgment matters as may be appropriate under court rules or as set forth in this Settlement Agreement.

98.     <u>Integration Clause</u>. This Settlement Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  This Agreement supersedes all prior agreements of the Parties concerning settlement of the Action, including the Confidential Settlement Term Sheet signed by the Parties after the mediation.  Except those set forth and included expressly in this Agreement, there are no other agreements, covenants, promises, representations, or arrangements between the Parties with respect to the Settlement of the Action and the Released Claims against the Released Parties.  No rights hereunder may be waived, except in writing.

99.     <u>Binding On Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

100.    <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Settlement Agreement, which shall be binding upon and effective as to all Parties. Electronic signatures shall have the same force and effect as an original.

101.    <u>Severability</u>.  Without limiting Paragraph 79 of this Agreement, any term, condition, or provision of this Agreement which is, or is deemed to be, void, prohibited, or unenforceable in any jurisdiction is, as to such jurisdiction, severable here from, and is ineffective to the extent of such avoidance, prohibition and unenforceability without in any way invalidating the remaining terms, conditions, and provisions hereof. Any such avoidance, prohibition, and unenforceability in any jurisdiction does not invalidate or render unenforceable such term, condition, or provision in any other jurisdiction.

**NAMED PLAINTIFF ON BEHALF OF THE SETTLEMENT COLLECTIVE AND SETTLEMENT PARTICIPANTS:**

Dated: May ___, 2022

_____

Nancy De Block

Dated: May___, 2022        **COLLECTIVE COUNSEL:**

_____

_____

Attorneys for Plaintiffs

Dated: May ___, 2022        **COLLECTIVE COUNSEL:**

_____

_____

Attorneys for Plaintiffs

Dated: May ___, 2022        **DEFENDANT:**
          5/31/2022

DocuSigned by:

*Lillian Kirstein*

9A61F7FF42044C8...

Speedway LLC

By: _____
    Lillian Kirstein

Title: _____
    General Counsel, SVP, and Secretary

**NAMED PLAINTIFF ON BEHALF OF THE
SETTLEMENT COLLECTIVE AND SETTLEMENT
PARTICIPANTS:**

Dated: May 3(, 2022

Nancy De Block (May 31, 2022 14:17 EDT)

Nancy De Block

Dated: May 3(, 2022

**COLLECTIVE COUNSEL:**

Attorneys for Plaintiffs

Dated: May 31, 2022

**COLLECTIVE COUNSEL:**

Attorneys for Plaintiffs

Dated: May ___, 2022

**DEFENDANT:**

Speedway LLC

By: _____

Title: _____